ERNEST R. SULLINS *v.* THRIFT PLAN, INC.

73-160                                   501 S.W. 2d 781

Opinion delivered December 10, 1973

*Hodges, Hodges & Hodges,* for appellant.

*Erwin, Bowie & Boyce,* for appellee.

CARLETON HARRIS, Chief Justice. Ernest R. Sullins (appellant herein), prior to October 9, 1969, lived in the small community of LaHarpe, Illinois, being employed by Fred Gibb Chevrolet, Inc. On the aforementioned date, pursuant to a written purchase money security agreement, Sullins purchased a new 1970 Chevrolet Impala from his

employer, appellant having knowledge that the contract was assigned without recourse on the same day to Thrift Plan, Inc., appellee herein. Sullins made no down payment, the contract providing that the entire purchase price, including interest and amounting to $4,188.22, would be due and payable one year later, October 9, 1970. The agreement provided *inter alia* that the buyer would not sell, transfer, abandon, or encumber the vehicle, and that should the holder of the paper deem itself or said vehicle insecure, the full balance should become immediately due and payable without notice or demand and Thrift Plan, Inc. would be entitled to take possession of the automobile wherever found. Sullins operated the car from that date until the middle of March, 1970, at which time he terminated his employment and came to Arkansas, leaving the automobile with another Gibb Chevrolet salesman, Herb Fox, with certain instructions, hereinafter discussed. Subsequently, appellee learned that the automobile had been left with Fox, and it was repossessed by it, notice being given to appellant by certified mail on September 11, 1970 of the repossession and advising that the car would be sold pursuant to the Uniform Commercial Code unless Sullins paid for the automobile within ten days. No payment being made, appellee advertised the public sale in a Burlington, Iowa newspaper, but being unable to sell the automobile at said sale, the car was subsequently sold by private sale to the aforementioned Herb Fox for $2,500, resulting in a deficiency to the company of $1,686.62. Thrift Plan, Inc. instituted suit in the Jackson County, Arkansas Circuit Court for the deficiency, and Sullins counterclaimed for damages, totaling $9,988.22. Appellee moved for a summary judgment on this counter-claim in its favor, which was granted, and Thrift Plan, Inc. then dismissed its cause of action against Sullins, who has appealed the granting of the summary judgment on his counter-claim. Though three points are asserted by appellant, all relate to whether the granting of the summary judgment was proper under the facts, hereinafter related.

After the joining of the issues, interrogatories were submitted by Sullins to the company seeking the names of those to testify and a narrative summary of the testimony to be given by these witnesses at the trial of the

cause. The names were listed in the response, together with their purported testimony, reflecting that Robert W. Berry, manager of the company store at West Burlington, Iowa, would testify that in Mid-March of 1970, Fox had advised Berry that the automobile purchased by Sullins had been left at the Gibb Chevrolet Company with instructions that it be sold, and Sullins had further told Fox that he would be willing to take a loss in order to get rid of the automobile; since the contract prohibited the sale of the car by Sullins, Berry took the automobile into possession so that it could be sold by appellee; no suitable buyer was found, i.e., one that would make a bid approaching the amount of the indebtedness. On September 11, the company notified Sullins that it was going to sell the car and not hearing from him, it did make the sale to Fox on September 24, 1970 after taking three bids, and determining that $2,500 was the highest, leaving a balance due on the automobile of $1,686.62.

Further answering, appellee stated that Bruce Eckerman, a resident of Des Moines, Iowa, would testify that sometime during the summer of 1970, Sullins went to the Thrift Plan, Inc. office in Burlington, demanding possession of the car, but refused to pay for it, and possession was accordingly denied. Answers to further interrogatories revealed that the car had been repossessed at LaHarpe on approximately May 1, 1970. The answer to the final interrogatory set out that while payment for the car was not due until October 9, 1970, the agreement calling for it to be paid for in a one lump sum payment, the company upon learning that Sullins had left his employment at Gibb Chevrolet, had left the state after leaving the car for sale, deemed itself and the car to be insecure, and it thus considered the balance to be immediately due and payable.

It is not clear whether the answers were considered by the court in granting its summary judgment, several of the replies, of course, being improper and inadmissible, viz., those that deal with what other people would testify to. In *Organized Security Life* v. *Munyon*, 247 Ark. 449, 446 S.W. 2d 233, this court said:

"It must be affirmatively shown, or appear from

statements contained in any affidavit supporting or opposing a summary judgment, that it is based upon personal knowledge of the affiant, that the facts stated therein would be admissible in evidence and that the affiant is a witness competent to state these facts in evidence."

Thereafter, appellee submitted Requests for Admissions to Sullins, some of which were admitted, and others denied. Denials which appear particularly pertinent as to whether summary judgment should be granted are as follows:

"Request (22) Admit that you instructed Fred Gibb to sell said automobile for you.

*RESPONSE:* Denied in the form of the request since I left the automobile with Fred Gibbs[1] under the instruction to obtain an offer in a sufficient amount to pay off the contract to Thrift Plan, Inc., but not to violate any of the terms of the contract.

Request (23) Admit that you instructed Fred Gibbs to sell said automobile, if necessary, for a loss.

*RESPONSE:* Denied.

Request (24) Admit that you gave no notice to plaintiff of your intention to leave LaHarpe, Illinois.

*RESPONSE:* Denied in the form of the request. ***

Request (40) Admit that the plaintiff used commerciable reasonableness in the aforesaid sale of said automobile.

*RESPONSE:* Denied."

Thereafter, appellee moved for summary judgment, chiefly relying upon the answers given to the Requests for Admissions. In his response to the motion, Sullins asserted that nowhere in his response did he admit a vio-

---

[1]The names "Gibb" and "Gibbs" are both used in the record and abstract.

lation of the terms of the contract; that he never sold, abandoned, transferred or encumbered the vehicle, and he specifically denied that he left the vehicle with Herb Fox with instructions to sell and dispose of same as reflected by his answer to Request (22). This response was supported by his own affidavit wherein he stated that he had left the Chevrolet with Herb Fox with instructions to obtain an offer or purchase in a sufficient amount to pay off the contract at Thrift Plan, Inc., "not to sell and dispose of vehicle." He stated that he contacted Fox Frequently and inquired regarding offers concerning the vehicle; further, that he returned to LaHarpe with intentions to obtain the automobile and keep it, and discovered that it had been taken by the manager of Thrift Plan, Inc. The affidavit closed with the following paragraph:

> "When I left said automobile, Bob Berry, Manager of Thrift Plan, Inc., had full knowledge of the facts that the car was left with Herb Fox so that he might obtain offers to purchase. Bob Berry never voiced any objections whatsoever to these arrangements."

Subsequently, appellant served Requests for Admissions[2] of facts on appellee, these not being answered, and

---

[2]From the record:

"(1) Admit that Robert W. Berry, agent and branch manager of Thrift Plan, Inc. obtained possession of the 1970 Chevrolet owned by Ernest R. Sullins from Fred Gibb Chevrolet Company within two weeks after it was left in the possession of Fred Gibb Chevrolet Company by Ernest R. Sullins.

(2) Admit that Robert W. Berry drove said Chevrolet to Denver, Colorado, while he was on vacation after obtaining possession of said automobile.

(3) Admit that Robert W. Berry loaned said Chevrolet to Carl Ward, Denmark, Iowa while Robert W. Berry used Carl Ward's pick-up truck during July, 1970.

(4) Admit that at the time said Chevrolet was loaned to Carl Ward, there was more than 11,000 miles on said car.

(5) Admit that Robert W. Berry used said Chevrolet for personal use during the day and night.

(6) Admit that Robert W. Berry was having marital difficulties during this period of time, and that he used said Chevrolet while dating and going to nightclubs.

(7) Admit that Wayne Lee's speed shop, Burlington, Iowa, reduced the number of miles shown on the odometer by approximately 5,000 to 8,000 miles at the direction of Robert W. Berry.

(8) Admit that all of the above incidents took place prior to notifying Ernest R. Sullins that the car had been repossessed by Robert W. Berry, agent and branch manager of Thrift Plan, Inc."

the record reflecting that an extension of time until March 15, 1973 was granted within which to respond. No response to the requests, however, was filed, and appellant asserts that they should be considered as admitted. Appellee states that since, after the summary judgment was granted, it dismissed its complaint seeking a deficiency judgment, the question becomes moot because the facts requested to be admitted, if admitted, would only go to the reduction of appellee's deficiency claim. This does not necessarily follow.

Appellee, in its argument, calls attention to the fact that the contract expressly provided that Sullins could not sell, transfer, abandon, or encumber the automobile, and that should the company consider itself or the automobile insecure, it would be entitled to take possession of the car; it thus contended that Thrift Plan, Inc. was justified in repossessing the Chevrolet under the admitted factual situation, even though the lump sum purchase price and interest were not due and payable until October 9, 1970. Further, from the brief:

> "It should be remembered that the appellant was employed by the seller, and the employment factor was obviously the reason for the liberal terms of the purchase contract since the appellant paid nothing down on the purchase price, which, together with interest, was not made due and payable until one year later. Further, the appellant drove and had the use and benefit of the automobile in excess of five months, and he has never paid one cent on the purchase price. Without any notice to the appellee, the appellant terminated his employment with Fred Gibb Chevrolet, Inc., and left the state, having left the automobile with Herb Fox, a salesman for Fred Gibb Chevrolet, Inc., with instructions for the apparent sale thereof—*even at a loss!*"

Let it be remembered, however, that this litigation involves a summary judgment and the object of the procedure in such a case is not to determine an issue, but rather to determine whether there is an issue to be tried; to dispose of litigation on motion only when facts are not disputed and the law can be applied to them. *Ashley*

v. *Eisele*, 247 Ark. 281, 445 S.W. 2d 76. Let us compare appellee's argument with appellant's responses to the Requests for Admissions. To Request (6), "Admit that prior to October 9, 1969, you informed your employer that you desired to buy a new car from it", the answer was, "Denied in the form presented in this Request." Request (7), "Admit that your employer arranged for you to purchase a new car" was answered, "Denied in the form presented in this Request." There is nothing in the record which sets out as uncontroverted that the employment factor was obviously the reason for the liberal terms of the purchase contract. The statement that appellant terminated his employment with the Gibb Chevrolet Company without notice to appellee is disputed, Sullins stating in his affidavit that Berry, Manager of Thrift Plan, Inc. had full knowledge that the car was left with Fox so that he might obtain offers to purchase, and that Berry never voiced any objections to the arrangement.

It is argued by appellee that the matters mentioned, together with the fact that the automobile had depreciated in value due to time and use, and appellant had nothing invested in the automobile, clearly gave it the right to take possession of the vehicle in order to preserve and protect its security. Ark. Stat. Ann. § 85-1-203 (Add. 1961) provides that every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance or enforcement. Here, therefore, for a summary judgment to be justified, it must be definite and obvious that no fact question is involved as to whether appellee acted in good faith in repossessing the automobile, i.e., acted in good faith at the time it was taken.

We cannot agree that the record makes that fact so clear that it can be said, as a matter of law, that this was established. There are several matters which, we think, indicate this to be a jury question. Let if first be remembered that the car was taken several months prior to the due date of the note from Sullins. Next, it is denied by appellant that he left the car to be sold. Additionally, in his affidavit, he stated that Berry knew that the car was left with Fox in order to obtain offers of purchase and that Berry voiced no objections to such arrangement.

The Requests for Admissions, relating to use of the automobile after repossession, were never answered, appellee obtaining an extension of time until March 15, 1973 within which to respond. The record only further reflects appellant's motion filed on March 22 asking the court that the facts stated in the Requests for Admissions be deemed admitted. No order of the court appears and the motion for summary judgment was heard the next day, and judgment subsequently filed on March 29. Appellee, in its brief, gives its reasons why these requests were not answered, but, of course, not being a part of the record, such information cannot be considered.[3]

Nor does the court's order reflect whether the Requests for Admissions were considered by the court.

At any rate, we think factual issues were raised, and the granting of the summary judgment was erroneous.

Reversed and remanded.

---

[3]Another interesting fact is that in answering the interrogatories, Berry indicates in his reply to Interrogatory No. 1 that the car was repossessed in Mid-March, though in his reply to Interrogatory No. 2, he states that the car was repossessed in late April or around May 1, 1970. Berry also stated that he would testify that between May 1 and July 21, the car was kept at the office of Thrift Plan, Inc. in Burlington, Iowa, during the day and was driven home for "safekeeping" at night by Berry, and this same procedure was followed during July, August and September. This fact could well, particularly when taken in connection with the Requests for Admissions served upon Berry, raise a fact question as to whether the automobile was repossessed for security purposes, or perhaps repossessed for the personal benefit of Berry.