AFFILIATED FOODS SOUTHWEST, INC.
*v.* Fletcher B. MORAN et al.

95-671                                    912 S.W.2d 8

Supreme Court of Arkansas
Opinion delivered December 18, 1995

*Dover & Dixon, P.A.*, by: *Steve L. Riggs*, for appellant.

*Page & Thrailkill*, by: *Patricia Page* and *Henry Morris*, for appellees.

ANDREE LAYTON ROAF, Justice. This case involves a question concerning the law of torts. Appellant, Affiliated Foods Southwest, Inc., is an Arkansas cooperative that sells groceries to its member shareholders at wholesale. Appellees Fletcher B. Moran and Thomas K. Moran operated a member grocery store in Mena, Moran's Foodland, Inc. (Moran's), which obtained groceries from appellant on open account. This case arose from an action filed by appellant against appellees as guarantors of a promissory note owed by Moran's, after the grocery store had been placed in bankruptcy and sold. The appellees responded that appellant had acted in bad faith and filed a counterclaim for the amount appellant sought in its complaint against them. In a non-jury trial, the circuit judge found that appellees owed the unpaid balance due on the promissory note but also granted the appellees' counterclaim in an equal amount to offset appellant's award.

The appellant appeals from this judgment asserting the trial court erred in granting the counterclaim and in basing its opinion on a finding of bad faith on the part of appellant. We agree that the trial court erred and reverse.

## a. Facts

Moran's became a member of the appellant cooperative in 1986, and at that time established an open account for the purchase of inventory from appellant. Appellant filed a Uniform Commercial Code (UCC) financing statement in 1986, taking a security interest in Moran's inventory of groceries and other merchandise, and in proceeds from sale of the collateral. By 1990, the open account had grown to $124,000, which was of concern to appellant. The $124,000 debt was set up as a promissory note with weekly payments of $627.00; appellees were required to personally guarantee this note. Moran's was allowed to continue purchasing groceries on open account; appellees were not at any time required to guarantee the open account. In 1992, appellant refiled its financing statement taking a security interest in Moran's equipment in addition to the inventory and cash collateral.

Moran's continued to experience financial difficulties, and by the fall of 1992, although the balance due on the promissory note had been reduced to approximately $67,000, the open account had grown to $132,000. The appellees attempted to sell the store in October 1993 to two employees of a rival Mena grocery store, which was also a member/customer of appellant. This attempt was unsuccessful when, according to the testimony of appellees and the prospective purchaser, appellant reneged on the agreement to finance the purchase a few days before it was to be consummated and the purchasers were unable to obtain financing elsewhere.

Appellees contacted appellant on December 8, 1993, and advised that they could no longer continue to operate the store and requested that appellant pick up the inventory. According to the testimony of appellees, the inventory at that time was sufficient to pay off the indebtedness; however, employees of appellant ordered them to continue operation of the store and stated that appellant would assist in finding a purchaser. Appellees closed the grocery store about three weeks later after an inventory reduction sale, and Moran's was placed in bankruptcy on January 4, 1994. The bankruptcy trustee later abandoned interest in the inventory and equipment of Moran's to appellant. It was sold for $48,000, and all of the proceeds applied toward the unguaranteed open account.

In response to the complaint filed by appellant to collect the $64,000 balance due on the guaranteed promissory note, appellees acknowledged liability on the note but raised a number of defenses, including bad faith. Appellees also filed a counterclaim, in which they alleged that appellant became a partner in the business, or became an agent of appellees, by refusing to take merchandise (inventory) when offered and by directing appellees to continue operation of the grocery store, and that appellant caused the loss it complained of by accepting, then withdrawing, an offer by a third party to purchase the inventory.

After hearing the testimony, the trial court found that there was evidence that appellant acted in bad faith, stating:

> But, it's here for me to believe or not that Affiliated willfully and in bad faith, failed to go through with the financing for [the purchaser]. Now, they don't have any obligation to do it, but once they start, then - and if they're acting in bad faith which I think there's some evidence of, I think it's clear that — to me anyway, that they didn't go through with it because they didn't want to incur the wrath of another customer. I think that gives the Morans a defense.
>
> . . .
>
> Now, the Morans got themselves into a situation and I don't know whose fault it was, I don't think they were made to borrow the money at gun point by Affiliated, but having gotten into that situation, I believe Affiliated was — had some obligation to help them out and didn't do so.

### b. Tort of Bad Faith

On appeal Affiliated argues, and appellees concede, that we have limited the tort of bad faith to insurance cases. *American Health Care Providers, Inc.* v. *O'Brien*, 318 Ark. 438, 886 S.W.2d 588 (1994); *Quinn Cos.* v. *Herring Marathon Group, Inc.*, 299 Ark. 431, 773 S.W.2d 94 (1989); *Aetna Casualty & Surety Co.* v. *Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1983). We have said that "a claim based on the tort of bad faith must include affirmative misconduct by the insurance company, without a good faith defense, and that the misconduct must be dishonest, malicious, or oppressive . . ." and cannot be based on negligence or bad judgment but upon actual malice, "that state

of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge." *Aetna Casualty & Surety Co., supra*. Nevertheless, appellees suggest that the relationship of the parties is one of a wholesale vendor selling goods to a retail vendor and that the appellant also assumed the role of a "lender," consequently the UCC requirement of "good faith" dealings provides a basis for affirming the trial court in this instance. Arkansas Code Annotated § 4-1-203 (Repl. 1991) provides: "Every contract or duty within this subtitle imposes an obligation of good faith in its performance or enforcement." Good faith is defined as "honesty in fact in the conduct or transaction concerned." Ark. Code Ann. § 4-1-201 (Supp. 1993).

We have considered the general good faith requirement found in § 4-1-203 and its predecessor, Ark. Stat. Ann. § 85-203 on three occasions. *Adams* v. *First State Bank*, 300 Ark. 235, 778 S.W.2d 611 (1989) (bank exercised right of set-off); *Sullins* v. *Thrift Plan, Inc.*, 255 Ark. 655, 501 S.W.2d 781 (1973) (repossession and sale of automobile by secured creditor); *Farmers Equip. Co.* v. *Miller*, 252 Ark. 1092, 482 S.W.2d 805 (1972) (repossession and sale of tractor by secured creditor). However, we agree with appellant that failure to exercise good faith raises the issue of breach of contract and is not present in the instant case. Here, the only contract at issue between the parties is the promissory note; appellant did not contract with Moran's, the appellees, or the prospective purchasers of Moran's to finance the purchase of Moran's by the third-party purchasers. Also, it is well settled that a holder of a promissory note has no duty to accept an offer of the collateral pledged by the maker of the note in lieu of payment; appellant accordingly was under no obligation to accept the inventory from the grocery store in order to discharge the debt owed on the promissory note. *See Moore* v. *Luxor (North American) Corp.*, 294 Ark. 326, 742 S.W.2d 916 (1988); *Storthz* v. *Commercial National Bank*, 276 Ark. 10, 631 S.W.2d 613 (1982).

Appellees' contention that the appellant ordered them to continue to operate the store, and in so doing, became a partner in the business is without merit. Appellant's employee testified that he merely advised appellees to keep the store open because they were attempting to sell it and a going concern would have a higher value. Appellee Fletcher Moran testified that he

considered this advice an "order" because the business inventory was used as collateral for the debt owed to appellant and he was trying to get them to come down and recover their merchandise. The burden of proving a joint venture rests on the party asserting the relationship, and it is generally understood that the relationship of borrower and lender does not establish a joint venture. *Burge v. Pack*, 301 Ark. 534, 785 S.W.2d 207 (1990).

Finally, appellant's employee testified that the purpose of the promissory note was to clear the sizeable open account which was due immediately, and to give the appellees additional time to pay off the account, but that Moran's continued to "go downhill." He stated that although appellants had no obligation to find a buyer for Moran's, they did try to assist them by sending several people who were interested in the store to Moran's. He testified that "Basically we were trying to help Moran's out to get them out of the store before they lost any more money." In sum, appellees presented no evidence that the appellant was dishonest in its dealings with them concerning the promissory note.

We reverse and remand to the trial court for entry of judgment in favor of appellant and dismissal of the appellees' counterclaim.