COUNTRY CORNER FOOD AND DRUG, INC. *v.*
FIRST STATE BANK and TRUST COMPANY of Conway,
Arkansas, Tommy Watson and Virgil C. Shannon

97-608 966 S.W.2d 894

Supreme Court of Arkansas
Opinion delivered April 23, 1998

*Streett & Coutts,* by: *Alex G. Streett,* for appellant.

*Graddy & Adkisson, P.A.,* by: *William C. Adkisson,* for appellee First State Bank & Trust Co.

*Brazil, Adlong, Murphy & Osment,* by: *Matthew W. Adlong,* for appellees Watson and Shannon.

ROBERT L. BROWN, Justice. This case arises out of a business loan for operating capital made by appellee First State Bank and Trust Company of Conway, Arkansas (Bank) to appellant Country Corner Food and Drug, Inc. (Country Corner). In 1987, Charles Pitman and Douglas Horton and appellees Tommy

Watson and Virgil C. Shannon were all shareholders in two corporations. The corporations owned and operated two grocery stores named Perry County Food & Drug and Country Corner Food & Drug. The corporations were named Perry County Food & Drug, Inc., and Country Corner Food & Drug, Inc. A swap agreement was made among the shareholders to divide the shares of the two corporations, where Watson and Shannon would become sole shareholders in Perry County Food & Drug, Inc., while Pitman and Horton would be the sole shareholders of Country Corner Food & Drug, Inc. Country Corner would lease the property for its grocery store from Watson and Shannon.

In furtherance of the swap agreement, on March 17, 1988, Country Corner obtained a loan from the Bank for one year in the amount of $194,734 for the purpose of financing inventory. Because Country Corner and Pitman and Horton were unable to obtain this financing on their own, Watson and Shannon and their spouses signed the promissory note as guarantors. When the promissory note came due on March 17, 1989, Watson and Shannon refused to sign the new note as guarantors, and the Bank declined to renew the note. Country Corner failed to satisfy the debt in accordance with the terms of the note, and the Bank foreclosed on the note and collateral.

On July 18, 1989, Watson and Shannon filed a suit in chancery court against Country Corner and prayed that the court appoint a receiver to prevent Pitman and Horton from selling off the inventory of Country Corner and, thus, depleting the collateral for the Bank loan. The Bank intervened claiming an interest in the same property. Country Corner then filed an action in circuit court against the Bank and Watson and Shannon and asserted several causes of action in tort.[1] On August 17, 1989, the chancery court appointed a receiver who ultimately sold the Country Corner store and its assets. Watson and Shannon next paid the balance due under the note pursuant to their guaranty agreement. What remained to be litigated in circuit court were

---

[1] By order of October 23, 1989, Country Corner's tort action was transferred and consolidated with the action filed by Watson and Shannon in chancery court. On May 3, 1991, Country Corner's action was transferred back to circuit court.

the causes of action in tort filed by Country Corner against the Bank and Watson and Shannon.

On August 6, 1992, the circuit court granted a motion to dismiss Country Corner's complaint against all appellees on the grounds that Country Corner had failed to plead sufficient facts to state a claim under Ark. R. Civ. P. 12(b)(6). On August 20, 1992, Country Corner filed an amended complaint, and appellees again moved to dismiss. By order dated October 1, 1992, the circuit court granted the Bank's motion to dismiss but denied the motion with respect to Watson and Shannon. Following more than a year of discovery, Watson and Shannon filed a motion for summary judgment. On December 4, 1996, the circuit court entered its order granting summary judgment. Country Corner now appeals from the two orders.

### I. Bank's Dismissal Under Rule 12(b)(6)

For its first point, Country Corner argues that its amended complaint sufficiently alleged facts to state claims against the Bank. The Bank counters that the amended complaint against it was properly dismissed because it was not timely filed, and even if it was, Country Corner failed to plead sufficient facts under Ark. R. Civ. P. 12(b)(6).

We conclude that Country Corner's amended complaint was timely filed within the ten days allowed by the circuit court. Rule 6 of the Arkansas Rules of Civil Procedure states that "[w]hen the period of time prescribed or allowed is less than eleven (11) days, intermediate Saturdays, Sundays, or legal holidays shall be excluded in the computation." The order of dismissal was filed on August 6, 1992, and the amended complaint was filed on August 20, 1992, exactly 10 days later, excluding weekend days. We will, as a result, review the appeal on the merits.

This court has often stated the standards to be applied in reviewing a dismissal order under Rule 12(b)(6):

> In reviewing a trial court's decision on a motion to dismiss under Rule 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Neal v. Wilson*, 316 Ark. 588, 873 S.W.2d

552 (1994); *Gordon v. Planters & Merchants Bancshares, Inc.*, 310 Ark. 11, 832 S.W.2d 492 (1992); *Battle v. Harris*, 298 Ark. 241, 766 S.W.2d 431 (1989). In deciding dismissal motions, the trial court must look only to the allegations in the complaint. *Neal v. Wilson, supra; Wiseman v. Batchelor*, 315 Ark. 85, 864 S.W.2d 248 (1993); *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992). In order to state a cause of action, the complaint must allege facts and not mere conclusions. Ark. R. Civ. P. 8; *see also Hollingsworth v. First Nat'l Bank & Trust Co.*, 311 Ark. 637, 846 S.W.2d 176 (1993); *Rabalaias v. Barnett*, 284 Ark. 527, 683 S.W.2d 919 (1985). When a complaint is dismissed without prejudice, the plaintiff has the option of pleading further or appealing. *Hollingsworth v. First Nat'l Bank & Trust Co., supra.* If the plaintiff appeals, the option to plead further is waived in the event of an affirmance by the appellate court. *Id.*

*Hunt v. Riley*, 322 Ark. 453, 457, 909 S.W.2d 329, 331-32 (1995).

■ Arkansas is a fact-pleading state, and this court looks to the underlying facts supporting an alleged cause of action to determine whether the matter has been sufficiently pled. *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997). Country Corner contends that its amended complaint included sufficient facts to support six causes of action in tort against the Bank: fraud, tortious interference with the contractual relationship or business expectancy, breach of fiduciary duty, duty to act in good faith, duress, and punitive damages. We will consider the claims *seriatim*.

a. Fraud

■ Country Corner first urges that it properly pled fraud by the Bank. We have stated that actual fraud is established by proving the existence of the following five elements: (1) a false representation, usually of a material fact; (2) knowledge or belief by the defendant that the representation is false; (3) intent to induce reliance on the part of the plaintiff; (4) justifiable reliance by the plaintiff; and (5) resulting damage to the plaintiff. *Wiseman v. Batchelor*, 315 Ark. 85, 864 S.W.2d 248 (1993). In order to prevail over a Rule 12(b)(6) motion, Country Corner must plead sufficient facts to support all five elements.

In paragraphs 27 through 31 of its amended complaint, Country Corner alleges that Bank representatives made false representations by stating that the 1988 promissory note in the amount of $194,734 would be renewed. In paragraph 22 of the complaint, Country Corner further alleges that the Bank informed it that the renewal note was being prepared in 1989 and that Country Corner should only pay interest on the note until the renewal note was executed.

■ ■ Assuming that these allegations are true, the statements by the Bank representatives do not support an action for fraud. First, there are no facts alleged supporting an allegation that these statements by the Bank were false at the time they were made. The Bank could well have been in the process of renewing the note but decided that additional security in the form of a Watson/Shannon guaranty on the new note was warranted. Secondly, even assuming that the Bank knew the statements were false, there are no facts pled by Country Corner to show justifiable reliance on its part. In fact, there was no reason for Country Corner to rely on these statements to its detriment. The statements allegedly made by the Bank merely lessened Country Corner's immediate financial burden in the interim by requiring it only to pay interest. And, again, Country Corner had to be aware that the Bank could require additional security.

■ Finally, even if the Bank made these statements with the intent that Country Corner rely on it, the Bank had the right to refuse to renew the loan. Country Corner pled no facts which would show that the Bank was obligated to renew the loan without the guarantee of Watson and Shannon on the new note.

b. *Tortious Interference*

■ Country Corner also claims that it has sufficiently pled a claim for tortious interference with contractual relationship or business expectancy against the Bank. Paragraphs 32 and 33 of Country Corner's amended complaint relate to its allegations of tortious interference. Paragraph 32 incorporates the previous paragraphs of the complaint, and paragraph 33 merely states that the Bank interfered with Country Corner's "contract advantage"

by giving "assurances" and then refusing to renew the loan. Reference to the "assurances" apparently refers back to the allegations that the Bank representatives stated that the note would be renewed. Neither this section nor the previous incorporated sections indicates with what contract or with what business expectancy the Bank intended to interfere. It is elementary that some precise business expectancy or contractual relationship be obstructed by the Bank's actions. *See United Bilt Homes, Inc. v. Sampson*, 310 Ark. 47, 832 S.W.2d 502 (1992). That lapse is fatal to this cause of action.

### c. Breach of Fiduciary Duty

Next, Country Corner claims breach of fiduciary duty by the Bank. In paragraph 38 of the amended complaint, Country Corner alleges that a fiduciary duty was created by the fact that the Bank's attorney claimed to represent both Country Corner and the Bank in the creation of the loan. Country Corner contends that the duty was breached by the Bank's representative maintaining that it did not need separate counsel and by the Bank's providing a loan for such a large sum of money on a one year balloon note to an unsophisticated borrower.

This court has emphasized the necessity of factual underpinnings to establish a relationship of trust and confidence between a bank and its customers which is more than a debtor/creditor relationship. *Milam v. Bank of Cabot*, 327 Ark. 256, 937 S.W.2d 653 (1997); *J. W. Reynolds Lumber Co. v. Smackover State Bank*, 310 Ark. 342, 836 S.W.2d 853 (1992). *See also, Marsh v. National Bank of Commerce*, 37 Ark. App. 41, 822 S.W.2d 404 (1992). We do not agree that the allegations in this case meet that essential threshold. Lack of sophistication and the alleged advice not to seek independent counsel at best may have resulted in Country Corner's being misled, but these facts do not create a fiduciary relationship. We find no merit to this point.

### d. Good Faith

Paragraphs 40 through 43 of the amended complaint deal with Country Corner's claim that there was a tortious breach of

the implied covenant of good faith and fair dealing. Only paragraph 41 pertains to the actions of the Bank, and that allegation, once more, is that the Bank made representations to Country Corner that the note would be renewed each year but that the Bank had no intention of doing so.

 Country Corner relies on *Gordon v. Planters & Merchants Bankshares*, 326 Ark. 1046, 935 S.W.2d 544 (1996), to establish the tort of a breach of a duty to act in good faith. Yet, in *Gordon,* this court considered the duty of good faith as set out by Ark. Code Ann. § 4-1-203 (Repl. 1991), only in terms of considering whether punitive damages were allowable in that case. Furthermore, this court has recognized the affirmative tort of bad faith only against insurance companies. *See, e.g., Affiliated Foods Southwest, Inc. v. Moran*, 322 Ark. 808, 912 S.W.2d 8 (1995); *American Health Care Providers, Inc. v. O'Brien*, 318 Ark. 438, 886 S.W.2d 588 (1994); *Quinn Cos. v. Herring Marathon Group, Inc.*, 299 Ark. 431, 773 S.W.2d 94 (1989); *Aetna Casualty & Surety Co. v. Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1983).

Country Corner concedes that the tort of bad faith only applies to insurance companies but argues that this case is not a bad-faith case but rather is one for breach of the duty to act in good faith. The corporation claims that this duty is created by Ark. Code Ann. § 4-1-203 (Repl. 1991) and § 4-1-201(19) (Supp. 1997):

> 4-1-203. *Obligation of good faith.*
>
> Every contract or duty within this subtitle imposes an obligation of good faith in its performance or enforcement.
>
> 4-1-201. *General definitions.*
>
> (19) "Good faith" means honesty in fact in the conduct or transaction concerned.

 The fact that every contract imposes an obligation to act in good faith does not create a cause of action for a violation of that obligation, and, as discussed above, this court has never recognized a cause of action for failure to act in good faith. Country Corner adduces no authority or argument for why this court

should now recognize a new tort for failure to act in good faith or how such a recognition can be reconciled with our previous case law which only recognizes the tort of bad faith against insurance companies. Without a cogent reason supported by convincing authority for taking this step, we decline to recognize this new tort in Arkansas. *J. & J. Bonding, Inc. v. State*, 330 Ark. 599, 955 S.W.2d 516 (1997) (holding that when a party does not cite authority or make a convincing argument and it is not apparent without further research that the point is well taken, this court will affirm).

### e. Duress

We also refuse to recognize an independent tort for duress. Here, Country Corner appears to claim that the duress or coercion exercised by the Bank forced it to fail to stock the grocery store properly. Although it cites *Cox v. McLaughlin*, 315 Ark. 338, 867 S.W.2d 460 (1993), as providing the basis for the tort of duress, Country Corner concedes that duress is "not ordinarily recognized as an offensive doctrine." Country Corner cites no cases to support our recognition of the tort of duress, nor does it present a valid argument for why this court should now recognize the tort.

In addition, the facts pled by Country Corner in support of a new cause of action for duress do not meet its own definition. This court in *Cox* stated that in order to show duress, one must show that the duress resulted from the "wrongful and oppressive conduct, and not by his own necessity." If the Bank had the right to deny the renewal, such an action cannot have been wrongful and oppressive. Again, Country Corner pleads no facts to show that the Bank was required to renew the note or that the failure to renew it was an attempt to force Country Corner to do or refrain from doing a particular act. Thus, even if we were of a mind to recognize this new tort, which we are not, facts showing coercion have not been pled. There is no factual basis for this cause of action.

*f. Punitive Damages*

 Finally, Country Corner claims to have stated a claim for punitive damages. However, all parties agree that such a claim is dependent on the existence of an underlying compensatory claim. *Hale v. Ladd*, 308 Ark. 567, 826 S.W.2d 244 (1992). The trial court correctly dismissed this claim due to the absence of any viable compensatory claims.

## II. Summary Judgment

 Country Corner's second point is that the circuit court erred in finding that there were no material issues of fact in its case against appellees Watson and Shannon. It maintains that if any material fact question exists with respect to any element of any tort alleged, the case must be tried. *See Renfro v. Adkins*, 323 Ark. 288, 914 S.W.2d 306 (1996). We first emphasize that allegations in a complaint are not proof for summary judgment purposes. *See Wheeler v. Phillips Development Corp.*, 329 Ark. 354, 947 S.W.2d 380 (1997); *Porter v. Harshfield*, 329 Ark. 130, 948 S.W.2d 83 (1997); *Guthrie v. Kemp*, 303 Ark. 74, 793 S.W.2d 782 (1990). We fail to glean a material fact issue with respect to any of the claims asserted against Wilson and Shannon, and we affirm on this point as well.

In its order for summary judgment, the trial court first found that Country Corner's allegations were predicated on Watson's and Shannon's failure to guarantee a new note and that the two guarantors had paid the Bank the balance due on the note which was the subject of the guaranty agreement. The court then concluded that Watson and Shannon had no obligation to guarantee a new note in 1989 for two reasons. First, guarantors are favored in the law and the terms of any guaranty agreement should be strictly construed in their favor. *Arkansas Industrial Dev. Comm'n v. Fabco*, 312 Ark. 26, 847 S.W.2d 13 (1993). Secondly, the language of the Loan and Guaranty Agreement between the parties dated February 20, 1987, placed no obligation on Watson and Shannon to *sign* a renewal note. Indeed, the pertinent language of that agreement contemplated that the guarantors would be liable for any renewals of the note:

> This guaranty is and shall remain unqualified and unconditional, and shall apply to any and all obligations owed or to be owed by Country Corner, and any and all renewals and/or extensions thereof, with or without notice unto guarantors, and shall in all things remain unaffected by the occurrence or non-occurrence of any event of any nature other than payment in full of all indebtedness owed by Country Corner to bank.

■ We agree with the trial court. The above-quoted language makes it clear that Watson and Shannon were liable for the debt evidenced by a renewal note irrespective of whether they actually sign a renewal note as guarantors. Thus, there was no need for them to sign one. Nevertheless, the Bank was perfectly within its rights to request their guarantee on the renewal note as additional security and to refuse to renew the note in the absence of a new guaranty agreement.

■ The only evidence presented by Country Corner to show that Watson and Shannon had an obligation to sign a renewal note as guarantors was the deposition testimony of two Bank officers who testified that in accordance with the original agreement, the Bank would not extend the note without the guarantee of Watson and Shannon. But all this testimony does is underscore the fact that the Bank required a new guarantee of Watson and Shannon in order to extend the note. It does not prove that Watson and Shannon had a duty or an obligation to sign a renewal note under any written agreement with Country Corner, even though they may well have been liable for any note renewals under the terms of the Loan and Guaranty Agreement. In sum, there is no written document or other proof that Watson and Shannon ever agreed with Country Corner to guarantee a renewal note. Nor do we give any credence to Country Corner's assertion that there is a material fact question about whether Watson and Shannon acted in good faith.

■ Finally, Country Corner urges that Watson's and Shannon's failure to guarantee the renewal note was motivated by an effort to force Country Corner to pay a debt to a third party and that this constitutes fraud and intentional interference with the loan. However, if Watson and Shannon had no duty or obligation

by agreement with Country Corner to sign the new note as guarantors, their motives for refusing to do so are irrelevant.

■ We hold that the circuit court did not err in its order of summary judgment.

Affirmed.

NEWBERN, J., not participating.