

# NUMBER 13-14-00123-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**RAUL TREVINO LARA, JR.,**                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                 **Appellee.**

**On appeal from the 275th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Justices Garza, Benavides and Longoria
Memorandum Opinion by Justice Longoria**

Appellant Raul Lara was charged with murder, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West, Westlaw through 2015 R.S.). A jury found him guilty and sentenced Lara to fifty-five years in the Institutional Division of the Texas Department of Criminal Justice. In two issues on appeal, Lara argues that the jury charge

contained egregious error and that the trial court abused its discretion by not suppressing Lara's statements to the police. We affirm.

## I. BACKGROUND

In the evening of October 5, 2012, multiple individuals were having a "get together" in the street outside of their homes. Stevie Aguilar testified that on that night, he, Miguel Vasquez, and Ivan Lopez wanted to go to a restaurant so they decided to swing by the get together and see if their friend wanted to join them at the restaurant. Aguilar stated that as they arrived, an argument erupted, resulting in one girl from the party directing two other girls to leave. At that point, the two girls left the party on foot.

The two girls, L.T. and J.T.[1], are cousins. L.T. testified that she and several of her female friends, including her cousin J.T., went to the "get together" but were told to leave the party because they were underage. Once L.T. and J.T. left, they were picked up by Yaritza, L.T.'s sister, in her van. According to L.T. and J.T., the van had several other occupants: Eric Atwood, Yaritza's husband, was reportedly driving the car initially; Yaritza was in the front-right passenger seat; and appellant Lara and Leonardo Moreno were in the middle seats. Aguilar further testified that when he and his friends arrived at the party, they noticed the van drive by. Shortly thereafter, the van returned to the party, stopped, and the driver's-side middle sliding door opened.

Aguilar and others[2] testified that a figure in the van pulled out a pistol, stepped out of the vehicle, and began to shoot. Aguilar, who was still in the car driven by Miguel,

---

[1] We will refer to the girls by their initials to protect their identity.

[2] Other witnesses included Antonio Navarro, Crystal Trevino, Alvaro Guerra, Jamika Duncan, Andrea Gomez, Rogelio Torres, Nicholas Zapata, Christian Zapata, Martin Zapata, and Juan Pablo Sosa. The first five witnesses listed did not specifically identify Lara as a shooter but testified as to what they saw regardless. The latter five in the list specifically identified Lara as a shooter.

ducked down as the figure opened fire on the party. Although it did not appear that Miguel's car was a specific target, it was caught in the cross-fire and Miguel was killed as a result. L.T. and J.T. both testified that it was Lara and Moreno that fired out of the van at the crowd. Officers dispatched to the scene detained L.T. and J.T. because they were initially believed to be involved with the offense. However, they were released shortly thereafter. After speaking with several witnesses and party attendants, the police detained Lara for questioning. The police investigator read Lara his *Miranda* rights at the beginning of the interview. Lara also read a waiver form and signed it. During the course of the interview, the investigator told Lara that the officers had already spoken with several witnesses, that all the evidence pointed to Lara as a shooter, and that Lara might as well tell the police what happened. During this first custodial statement, Lara denied any knowledge of the shooting.

After ending the interview, members of the investigative team asked another officer to interview Lara again to see if they could find out any more information. As in the first custodial interview, the investigator advised Lara of his *Miranda* rights and had him sign a written waiver of these rights before the interview began. The investigator had Lara read the waiver form aloud to make sure he understood it. The investigator testified that Lara appeared to understand his rights by the way he nodded and by reading his rights aloud. During this second statement, Lara admitted to being in the van at the time of the shooting but claimed that Moreno was the only one that fired at the crowd. Lara admitted that he was in the middle seat originally but averred that he had moved to the backseat at some point.

L.T. and J.T. offered statements to the police and testified before the grand jury in 2012. L.T. and J.T. were both offered immunity from any prosecution in the present case in exchange for their testimony. The jury found Lara guilty of murder and sentenced him to fifty-five years' imprisonment. This appeal followed.

## II. ACCOMPLICE WITNESSES

In his first issue on appeal, Lara argues that the trial court reversibly erred by letting the jurors decide whether L.T. and J.T. were accomplices as a matter of fact instead of instructing the jurors that L.T. and J.T. were accomplices as a matter of law.

### A.    Standard of Review and Applicable Law

In analyzing a jury charge issue, we first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error is found, we then analyze whether the error caused any harm. *Id.* If a defendant has properly objected to the charge, then reversal is required if "some harm" occurred. *Id.* When the defendant fails to object, reversal is only required if the record reflects "egregious harm" to the defendant. *Id.* at 743.

An accomplice is an individual who participates with a defendant before, during, or after the commission of the crime and acts with the requisite culpable mental state. *Paredes v. State,* 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). Participation requires an affirmative act that promotes the commission of the offense with which the defendant is charged. *Id.* Being present at the crime scene, knowing about the crime, or failing to report the crime is insufficient to establish a person as an accomplice. *Id.*

In Texas, a conviction cannot be secured by the testimony of an accomplice unless that testimony is corroborated by other evidence tying the defendant to the offense. *See*

4

TEX. CODE CRIM. PROC. ANN art. 38.14 (West, Westlaw through 2015 R.S.); *see Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006). A witness is an accomplice as a matter of law only when, either based on trial evidence or the status of the witness as having been charged for the subject offense, "there exists no doubt that the witness is an accomplice." *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). "A witness who is indicted for the same offense or a lesser-included offense as the accused is an accomplice as a matter of law." *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). But if a witness is not an accomplice as a matter of law and there is doubt as to a witness's status, then a question about whether a particular witness is an accomplice is properly left to the jury with an instruction that defines "accomplice." *See Cocke*, 201 S.W.3d at 747. In other words, if the witness's status as accomplice is subject to dispute in light of the evidence, it is up to the jury to decide whether that person is an accomplice. *See id.* Failure to include an accomplice witness as-a-matter-of-law instruction "is generally harmless unless corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (quoting *Saunders v. State*, 817 S.W.2d 688, 689 (Tex. Crim. App. 1991)).

**B.      Discussion**

Lara did not object to the jury charge; thus, he must prove that any alleged error in the instruction caused him egregious harm. *See Ngo*, 175 S.W.3d at 743. Lara argues that L.T. and J.T. were accomplices as a matter of law because they were arrested and charged with the murder and then subsequently granted immunity in exchange for their testimony. Lara further contends that L.T. and J.T. were the "cornerstone" of the State's

5

case and that without their testimony, the evidence connecting Lara to the offense is scant and unpersuasive. As such, Lara argues that he was egregiously harmed by the trial court allowing the jury to decide if they were accomplices instead of instructing the jury to find L.T. and J.T. as accomplice witnesses as a matter of law.

However, Lara's claims are unfounded. Even though both were originally suspected to be involved with the murder and arrested, the charges against L.T. and J.T. were dropped long before any agreements to testify were arranged. L.T.'s immunity was arranged a few days before trial, and J.T.'s immunity agreement was reached during the trial itself. Because the evidence strictly contradicts the notion that L.T. and J.T. agreed to testify against Lara in exchange for the dismissal of the charge against them, it was proper for the trial judge to instruct the jury to determine the witnesses' status as a matter of fact. *See Smith*, 332 S.W.3d at 439. Furthermore, merely being granted transactional immunity does not automatically establish that party as an accomplice witness. *See Moulton v. State*, 508 S.W.2d 833, 836 (Tex. Crim. App. 1974) ("The mere fact that State granted transactional immunity to Sandoval did not, *ipso facto*, change his status into that of an accomplice as a matter of law . . . . The most that appellant was entitled to receive in the charge was a submission of the question as one of fact."); *Coutta v. State*, 385 S.W.3d 641, 655 (Tex. App.—El Paso 2012, no pet.). Beyond that, the record does not reveal any affirmative act by J.T. and L.T. that would necessitate finding them accomplices as a matter of law. *See Druery*, 225 S.W.3d at 498. Their presence in the car is not enough to qualify as accomplices. *See Paredes,* 129 S.W.3d at 536. The only evidence Lara points to that allegedly connects L.T. and J.T. to the offense is the assertion that J.T. was overheard by one of the party attendants as having said something on her

6

phone prior to the shooting akin to, "shoot, but not at my friends." However, at trial, Jasmine Villegas, the person on the phone with J.T. at that time, testified that J.T. never told Lara to shoot, she merely told him "not to shoot my friends." Reviewing the record, we find insufficient evidence to find J.T. and L.T. as accomplices as a matter of law. *See Druery*, 225 S.W.3d at 498. Thus, it was proper to leave their status as accomplices to the jury. *See Cocke*, 201 S.W.3d at 747. And the trial court here properly instructed the jury that if it found J.T. and L.T. as accomplices, then the jury could not convict Lara unless the corroborating evidence was sufficient to connect him to the offense. *See* TEX. CODE CRIM. PROC. ANN art. 38.14. We conclude that there was no error in the jury charge.

Even assuming an error in the instruction, there is no egregious harm because the State's case is not "clearly and significantly" less persuasive without the girls' testimony. *See Herron*, 86 S.W.3d at 632. Lara's own testimony places him in the vehicle at the time of the crime. His fingerprints were on the sliding door out of which the bullets were fired. Finally, Lara was identified as the shooter by five independent witnesses.[3] The corroborating evidence, even without L.T.'s and J.T.'s testimony, strongly connects Lara to the offense; thus, there would be no egregious harm. *See id.* We overrule Lara's first issue.

### III. ADMISSION OF CUSTODIAL STATEMENTS

In his second issue, Lara claims that the trial court erred by admitting his custodial statements into evidence, rather than suppressing them. Lara contends that the custodial

---

[3] By independent witnesses, we mean individuals unconnected to the girls' family and who are not implicated in this crime. Defendants argued heavily at trial that J.T. and L.T. lied to authorities and the grand jury to protect Atwood and other family members. But, as we indicated, there were five individuals outside of the girls' family that also identified Lara as the shooter: Rogelio Torres, Nicholas Zapata, Christian Zapata, Martin Zapata, and Juan Pablo Sosa.

7

statements were not made knowingly, intelligently, and voluntarily. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2 (West, Westlaw through 2015 R.S.).

**A.      Standard of Review and Applicable Law**

A trial court's ruling on a motion to suppress evidence is reviewed under a bifurcated standard of review. *See Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *See Wiede v. State,* 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Almost total deference is given to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *See Amador,* 221 S.W.3d at 673. The trial court's determination of whether a statement is given voluntarily is reviewed for an abuse of discretion. *See Sosa v. State*, 769 S.W.2d 909, 916 (Tex. Crim. App. 1989) (en banc).

Under section 38.22 of the Texas Code of Criminal Procedure, a written statement made as the result of a custodial interrogation is not admissible against a defendant unless that statement meets certain criteria. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2. In addition to being informed of his *Miranda* rights, section 38.22 requires that the defendant, "prior to and during the making of the statement, knowingly, intelligently, and voluntarily" waive his rights. *Id.*; *see Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "A statement is involuntary . . . only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d

8

199, 211 (Tex. Crim. App. 1995). It is not necessary for the State's warning to use the same exact language as found in section 38.22 as long as the warning substantially complies with the legislative intent. *See Sosa*, 769 S.W.2d at 916 (observing that "[a] warning which is only slightly different from the language of the statute but which conveys the exact meaning of the statute is sufficient to comply with the statute"); *Castellan v. State*, 54 S.W.3d 469, 480 (Tex. App.—Corpus Christi 2001, no pet.) ("An accused's signed waiver of rights on a written statement need not contain the exact verbal sequence 'knowingly, intelligently, and voluntarily' as long as the waiver substantially complies with the legislative intent of section 2(b).").

## B. Discussion

Lara argues that his custodial statements should have been suppressed because (1) the State failed to obtain an effective waiver of Lara's *Miranda* rights before the statements were made, and (2) the statements were not made voluntarily, knowingly, and intelligently since the interrogators allegedly coerced him. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2; *Miranda*, 384 U.S. at 444.

It is Lara's main argument that the State failed to obtain Lara's waiver *before* the custodial statements were made. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(b) (providing that custodial statements can be used against a defendant only if "the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section"). Lara argues that he did not sign an explicit waiver until the end of the interview and on the statement itself. Lara believes this signifies that the State took a "question first, warn later" approach, a method that has been condemned by the United States Supreme

9

Court. *See Missouri v. Seibert*, 542 U.S. 600, 611 (2004). In this approach, interrogators purposefully withhold *Miranda* warnings at the beginning of an interview, ask the accused questions, then give *Miranda* warnings, and then ask more questions until they receive the answers they had previously been given. *See id.* Furthermore, Lara argues that the State did not obtain a valid waiver before the interviews because this case is similar to *Garcia v. State,* 919 S.W.2d 370, 379 (Tex. Crim. App. 1994) (en banc). In *Garcia,* the defendant placed his initials next to all of the *Miranda* rights listed on the warning and waiver form to show that he understood his rights, but the court held that the form never explicitly demonstrated that the defendant actually *waived* those rights. *See id.*

However, the present case does not constitute a "question first, ask later" approach. Lara does not dispute that he signed a "Warning and Waiver" form at the beginning of each interview. However, Lara claims that the forms he signed at the beginning were not explicit waivers that complied with section 38.22; the waivers signed at the end of the interviews *may* have been sufficient, he concedes, but those were obtained too late. On the Warning and Waiver documents signed at the beginning of the interviews, the *Miranda* rights were listed. Lara then placed his initial to the left of each enumerated right to indicate that he understood them. Underneath the Warning section was the Waiver section:

> I have read this statement of my rights (this statement of my rights had been read to me) and I understand what my rights are. I am willing to discuss subjects presented and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

The police interrogators for both the first and second interview testified that Lara was read his *Miranda* rights at the beginning of the interview. They further testified that they had

10

Lara read the waiver portion aloud and that he appeared to understand it. On the actual statements that Lara signed after the interviews were conducted, they again listed each of the *Miranda* rights and Lara initialed each one to show comprehension of his rights. Below that, the statements contained the following: "I understand my rights as set out above. I knowingly and voluntarily waive such rights and freely and voluntarily make the following statement without compulsion or persuasion." Lara placed his initials next to this paragraph. The record clearly reflects that Lara was informed of his rights at the outset of each interview and that he clearly understood those rights and waived them. The trial court found that Lara made the statements knowingly, intelligently, and voluntarily, after being informed of his rights, and the record supports this finding.

In addition, this case is distinguishable from *Garcia.* *See* 919 S.W.2d at 379. In *Garcia*, the waiver did not, on its face, actually include the word "waiver" (or other equivalent language) anywhere; the waiver merely recited that defendant had been made aware of his rights and that he was not prompted to say what he said. *See id.* To the contrary, the language at issue in the present case, on both the Warning and Waiver forms and on the statement forms, is almost word-for-word identical to the language approved of in *Sosa.* *See* 769 S.W.2d at 914–15. In *Sosa*, the court of criminal appeals found that the warning and waiver form sufficiently complied with section 38.22 even though the body of the waiver did not include the word "waiver" or the exact sequence of "knowingly, intelligently, and voluntarily." *See id.* Likewise, we conclude that the waiver in the present case substantially complied with section 38.22(a) and 38.22(b) because the paragraph Lara signed was titled "waiver of rights" and uses language to suggest that the waiver was made knowingly, intelligently, and voluntarily, even though that specific

11

language was not employed. *See id.; Castellan*, 54 S.W.3d at 480; Tᴇx. Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. Aɴɴ. art. 38.22, § 2. It was not an abuse of discretion for the trial court to find that Lara waived his rights before and during the interview as required by section 38.22(b). *See Sosa*, 769 S.W.2d at 914–15.

Lara also contends that his statements were involuntary because of police coercion. Specifically, Lara refers to how the interrogators told Lara beforehand that they had spoken to other witnesses and all the evidence seemed to point to Lara. The officers further told Lara that he would go down for this offense so he might as well talk. But the statements were not involuntary simply because the police insinuated that all the evidence pointed to him and that Lara would "go down" for it. Police are allowed to use psychological tactics to obtain statements from suspects. *See Hernandez v. State*, 421 S.W.3d 712, 719 (Tex. App.—Amarillo 2014, pet. ref'd). For example, interrogators can play on the suspect's guilt, explain that honesty is the best policy, or tell the suspect that cooperation is in his best interest, as long as the ultimate decision to make a statement was a result of the suspect's voluntary "balancing of competing considerations." *Id.* at 717 (holding that the accused's statements were made voluntarily even though the interrogators told the defendant that all of the evidence "brought us back to you"). The important factor here is that Lara retained the ability to balance considerations and volunteer information of his own free agency. *See id.* None of the statements made by the police were of such coercive nature as to render Lara's statements involuntary. *See Alvarado*, 912 S.W.2d at 211. It was not an abuse of discretion for the trial court to find that Lara voluntarily waived his rights.

12

We conclude that the trial court did not abuse its discretion by admitting Lara's custodial statements. We overrule Lara's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.


Nora L. Longoria
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of December, 2015.