WATTS *v.* MAHON.

5-105                                        264 S. W. 2d 623

Opinion delivered February 15, 1954.

*J. II. A. Baker,* for appellant.

*Bob Bailey, Jr.,* and *Bob Bailey,* for appellee.

J. SEABORN HOLT, J. The parties to this litigation (except Lucille Mahon, who is the daughter of appellee, Dessie Mahon) are the brothers and sisters of James Berry Watts, who died intestate, November 10, 1951, without issue.

Appellants brought this suit, alleging, in effect, that they, along with the appellee, Dessie Mahon, "are the only heirs of the said James Berry Watts" and, as tenants in common, they and Dessie Mahon are entitled to all of Berry Watts' property owned by him at his death, which included real estate in the city of Russellville, War Bonds, cash, a Chevrolet automobile and other personal property. They asked that the Chancery Clerk be appointed as commissioner to take charge of said property and for partition.

Appellees, in an answer and cross complaint, denied that appellants had any interest in any of said property, and alleged that "a number of years prior to the death of James Berry Watts, the defendants, Dessie Mahon

and Lucille Mahon, were living at Leslie in Searcy County, Arkansas, with Mrs. Martha E. Watts, deceased, the mother of James Berry Watts, deceased, and the said James Berry Watts requested that the defendants and his mother move to Russellville and all live together; * * * and James Berry Watts at that time advised the defendants that he desired that they all live together, share the home, which was at that time rented property, as one family, and for several years James Berry Watts, Mrs. Martha E. Watts and these defendants lived together by common consent and agreement.

"That the deceased, James Berry Watts, with the knowledge and consent of the defendants and with the understanding that the property would be jointly owned and that when it was paid out the said James Berry Watts, deceased, would make a deed or a will to said defendants, Dessie Mahon and Lucille Mahon, and his mother, Mrs. Martha E. Watts, now deceased, thereby creating an estate by the entirety, the survivors, or survivor, taking the property; * . * * that the purchase price (of the real property in question, $956.26) was to be paid by the deceased, James Berry Watts" and appellees;

That James Berry Watts "and the defendants herein, as well as Mrs. Martha E. Watts, now deceased, were to share the property jointly, keep the payments paid on the purchase price, pay the taxes and pay the insurance and that in line with said agreement, the said James Berry Watts, Mrs. Martha E. Watts and these defendants met all of the obligations pertaining to the purchase price of said property, paid the taxes and insurance and made improvements, it being distinctly understood by the deceased, James Berry Watts, that he would convey by warranty deed or by will any and all interest he had in said property herein described.

"That * * * the said James Berry Watts, Mrs. Martha Watts and the defendants herein lived together, the defendant, Lucille Mahon, working regularly and putting the proceeds from her labor into the home, improvements thereon, taxes and insurance, and the said

James Berry Watts putting the proceeds of his labor into the home, improvements thereon, taxes and insurance."

They further alleged that they, appellees, complied with their part of the agreement, but that James Berry Watts failed to convey this home property to them, either by will or deed, as promised. They asked the court to vest title to all the property involved in them, including the title to the automobile in question.

A trial resulted in a decree in favor of appellees on all issues except their claim to the automobile, which the court found to belong to Berry Watts' estate.

A large amount of testimony was presented, some of which is in irreconcilable conflict. The rule is well established that in order for appellees to sustain their contention that Berry Watts entered into an oral contract with them to convey the real property involved to them by will or deed, they must assume the heavy burden of establishing such contract by clear, satisfactory and convincing testimony.

"The validity of an oral contract to make a will has long been recognized and such contracts have often been enforced by the courts. (Citing cases) But it is equally well settled that the testimony to establish such a contract must be clear, satisfactory and convincing. (Citing cases) As was said by the court in the case of *Kranz* v. *Kranz*, 203 Ark. 1147, 158 S. W. 2d 926, wherein it was sought to establish such a contract, 'it is not sufficient that he establish it by a preponderance of the testimony, but that he must go further and establish the contract by evidence so clear, satisfactory and convincing as to be substantially beyond a reasonable doubt,' " *Jensen* v. *Housley, Administrator*, 207 Ark. 742, 182 S. W. 2d 758, and in *Offord* v. *Agnew*, 214 Ark. 822, 218 S. W. 2d 370, we said:

" 'In most of the cases, if not all of them, sustaining oral contracts to devise or convey lands upon performance of the consideration therefor, the plaintiffs have performed usually at sacrifices to themselves and

performed services not easily compensated in money. * * * In *Williams* v. *Williams*, 128 Ark. 1, 193 S. W. 82, it was said that the evidence ''clearly establishes the fact that plaintiff went to live with his uncle under an agreement that the latter was to convey the property to him in consideration of the care and attention to be bestowed during the latter's lifetime, and that plaintiff occupied the premises pursuant to that agreement and made substantial improvements,'' and further said, ''In order to assume the obligations imposed upon him by the contract, he made an entire change in his surroundings and changed his occupation and place of residence.'' In the Speck-Dodson case, similar facts were shown relative to plaintiff's change of residence and occupation.'

''It is noted that in our former cases the promisee, as a consideration for the agreement of the promisor to convey or devise lands, has agreed to render services or perform acts in the future. In other words the agreement to make a will is supported by a prospective rather than a past consideration. As in other contracts, a promise to make a will cannot be enforced without consideration.''

After a review of all the testimony, we have concluded that appellees have met this burden of proof imposed upon them.

Dessie Mahon testified positively and in detail that Barry Watts induced her, with her daughter, to move from Leslie to Russellville in 1930 to live with him. In 1938, Dessie Mahon, her daughter, Berry Watts, and the mother of Dessie Mahon and Berry Watts acquired and moved into the home involved here on the promise that they would all live together as one family, jointly pay out the balance due on the home, share all expenses, including insurance, taxes and improvements, and in consideration that he would will or deed this property to them. There was other testimony from many disinterested witnesses that tended strongly to corroborate appellees.

Mrs. Jean Vincent testified that she and Berry Watts worked for two cooperage companies in Russellville from

1935 to 1944 and that she has known appellee from 1940 and related: "On numerous occasions, Berry told me they were the only family he had that was close to him that he cared anything about or that cared anything about him. * * * I knew when he bought the place at 1309 South Arkansas Ave., Russellville, that he was buying the home and that his sister, Mrs. Dessie Mahon, and his niece, Lucille Mahon, were helping to make the payments on the home. I also knew Berry intended to make his sister and his niece a deed to the place or intended to will it to them, subject to his lifetime. * * * Berry told me he wanted everything he had to go to his mother (deceased), his sister, Dessie Mahon, and his niece, Lucille Mahon. * * * Berry and I were very close. We had numerous long talks at different times, and always during our conversations, Berry expressed great concern for his mother, his sister, Dessie, and his niece, Lucille."

Mrs. Velma Keltner, a near neighbor, who visited appellees in their home almost daily since 1948, testified: "Q. When, you understood that in the case of the death of Berry and Mrs. Watts, it went to Lucille and her mother, and in the case of the death of Mrs. Mahon it would go to Lucille. A. Yes, that was the general talk in the community. Q. Did you ever see any of the Watts over there visiting? A. Not very often, they never did even come. They all looked after each other. Q. You didn't see any of the Watts look after Grandma Watts? A. No. Q. Did any of them ever come to look after Berry when he was sick? A. No, they always looked after them."

T. B. Price testified: "On several different occasions in conversation with me Berry expressed a deep feeling for Miss Lucille Mahon, a feeling such as a father would express towards his daughter. In conversation in midsummer of 1949, while standing in our front yard, Mr. Watts said he would like to build a rental house on the back lot, and further said, 'It might not do me much good but it would "Punk" and Dessie, as they will get

what I have.' 'Punk' is the name, nickname, of Lucille Mahon."

The Chancellor, after giving to this case a patient and extended hearing, made findings containing these recitals: "That in about the year 1929, Berry Watts secured a divorce from his wife in this court and soon thereafter requested his mother, Mrs. Martha Elizabeth Watts, his sister, Mrs. Dessie Mahon, and his niece, Miss Lucille Mahon, a daughter of Dessie Mahon, to move from Leslie, Arkansas. to Russellville, Arkansas, and make their home with him, and agreed at that time that all four of them should live together as one family;

"That in compliance with said request and agreement, Mrs. Martha Elizabeth Watts, Mrs. Dessie Mahon and Miss Lucille Mahon did move from Leslie to Russellville in 1930 and from that time until July 1951, lived together as one family, sharing the home and paying the expenses, and by common consent, agreeing that in the event of the death of either of them the other three would become the owners of the property, and Mrs. Martha Elizabeth Watts, the mother of Berry Watts and Dessie Mahon, died in July 1951, after a long illness. * * *

"The court further finds that there was an agreement among all four of said parties, to-wit: Martha Elizabeth Watts, Dessie Mahon, Lucille Mahon and Berry Watts, that they all should be joint tenants in and to the real estate hereinabove described and that Berry Watts would draw up a will or execute his deed to the others so that they should share and share alike in said property as joint tenants;

"That the defendants, Dessie Mahon and Lucille Mahon, made the payments, paid the taxes and made improvements on said property and, under the contract and agreement, took possession of said property and continued in the possession thereof up to the time of the death of Martha Elizabeth Watts and Berry Watts, and, under said agreement, the defendants, Dessie Mahon and Lucille Mahon, are now in possession of said property and have been at all times since 1938 when said property was first acquired.

". "The court further finds from the testimony introduced in behalf of both the plaintiffs and the defendants that it was the intention of the deceased, Berry Watts, that his sister, Dessie Mahon, and his niece, Lucille Mahon, become the owners of said property and that the defendant, Lucille Mahon, after her graduation from College in 1940, has been steadily employed and has assisted in keeping all of the expenses paid, including the expenses of the severe illness of Berry Watts, who was unable to work for approximately fifteen months.

"The court further finds that the * * * automobile * * * belongs to the estate of James Berry Watts, deceased, and must be delivered to the duly appointed, qualified and acting administrator."

We think the testimony as a whole supports this fact summation by the trial court, and the decree thereon.

On the whole case no error appearing, the decree is affirmed.