Eugene WILLIAMS et al *v.* J. H. ROBINSON

5-5668                                        476 S.W. 2d 1

Opinion delivered February 14, 1972

*Christopher C. Mercer, Jr.* and *David R. Munroe,* for appellants.

*Bruce Ivy* and *James E. Hyatt, Jr.,* for appellee.

Frank Holt, Justice. This is an action by appellee for specific performance of an oral contract to make a will devising land to him and for confirmation of title. Emma French, the owner of 39.93 acres of farmland in Mississippi County, died intestate at age 81 on September 8, 1967, survived only by her grandson, appellant Eugene Williams. Appellee Robinson filed suit on August 30, 1968 claiming title to the land based upon an

oral contract whereby decedent had agreed in 1962 to give him her farm at her death if he would leave his home in Memphis to live with her and provide care and assistance for her personal needs during her lifetime. From a decree declaring appellee the owner of the land, together with the rents from the date of Mrs. French's death, appellants, Williams and his mother, decedent's daughter-in-law, bring this appeal.

For reversal appellants assert there was not sufficient clear, cogent, satisfactory and convincing evidence to establish a contract to make a will or execute a deed. They also contend there was not sufficient evidence of part performance in reliance upon an oral agreement to take the purported oral contract out of the statute of frauds. Appellants assert that appellee's move from Memphis to decedent's home, where he admittedly lived for five years, was for his own personal benefit inasmuch as he no longer had to pay rent, had the constant use of a car, was gainfully employed during the week, pastored two churches in the general area on Sunday, and had the advantages of Mrs. French's society.

The appellee testified that: Mrs. French, his second cousin, came to his home in Memphis two or three weeks after the death of her husband in 1962 and told him that if he would come to Arkansas and care for her during the remainder of her life, she would leave him her farm; he accepted her proposal and gave up his position as pastor of the First Baptist Church in Memphis; he moved into Mrs. French's home and assumed the duties normally performed by the man in the household. Appellee further testified that after the second year his duties increased because she became unable to care for herself; that he had done the cooking, washing, ironing, mopping, and everything else relating to household duties; that he had also cared for Mrs. French's stepdaughter, Bitsy (an incompetent girl between 20 and 30 years of age); that his duties and responsibilities further increased as Mrs. French's illness became worse; that eventually he had to bathe and feed her because she was unable to handle a spoon for about three months prior to her death; that Mrs. French's attempt to make a will

was thwarted because of the absence of a lawyer's secretary; that illness had prevented her from returning to the office to complete the will; and that he had contributed his personal earnings toward the household expenses during the five years he had lived with Mrs. French.

A neighbor testified that Emma French had said to him: "I have made up my mind I am going over and ask Brother Robinson to come stay with me and see after me and if he will do that and come and stay with me at my death I will will him this farm"; that Emma French gave a testimonial at church about a year later during which she said that she intended to leave appellee the land; that he had observed appellee taking care of Mrs. French and that he did everything a "good husband" would do. A Department of Public Welfare employee stated that she had had occasion to visit the home of Emma French in 1964 and had kept notes of her conversation in her file. This witness had these notes when testifying that:

> "We continued the conversation. I asked her what her plans were for the property since she had no children and she told me she was willing her property to her cousin, Rev. W. [J.] H. Robinson and pointed to him. She was sitting at my right and he was sitting to my left.

> *  *  *

> She stated her health was bad and she had to send for him and he had been in the house two or three years and he had been doing her washing, cooking, doing her errands, * * *.

> She said she sent for him. I don't remember where he was but he was not in this locale."

Other witnesses also corroborated appellee's evidence.

Appellant introduced evidence from Mrs. French's stepdaughter, Rose Ann, a stepson, pastor, and close

friends to the effect that Mrs. French had never indicated to them that she intended to give the land to appellee. Her stepson, who was living with her at the time appellee moved into the house, testified that he had no knowledge of how he [appellee] came to the house but that he had heard appellee ask his stepmother if he could come and live with her. Decedent's close friend testified that Mrs. French had told her that appellee had asked her permission to live in her house, explaining that he had separated from his wife. According to appellants' witnesses, appellee's presence in the home was solely for his own personal comfort and benefit.

An oral contract to make a will or deed to real estate is valid when the testimony to establish such a contract is clear, cogent, satisfactory, and convincing. *Crowell* v. *Parks,* 209 Ark. 803, 193 S. W. 2d 483 (1946); *Walk* v. *Barrett,* 177 Ark. 265, 6 S. W. 2d 310 (1928). Furthermore, we have said that one who changes his residence and employment, then supports and cares for a promissor during the remainder of his life, pursuant to a valid oral agreement, evidences conduct sufficient to take the contract out of the statute of frauds. *Fred* v. *Asbury,* 105 Ark. 494, 152 S. W. 155 (1912). In *Watts* v. *Mahon,* 223 Ark. 136, 264 S. W. 2d 623 (1954) we quoted with approval from *Williams* v. *Williams,* 128 Ark. 1, 193 S. W. 82 (1917):

> "* * * the evidence 'clearly establishes the fact that plaintiff went to live with his uncle under an agreement that the latter was to convey the property to him in consideration of the care and attention to be bestowed during the latter's lifetime, and that plaintiff occupied the premises pursuant to that agreement and made substantial improvements,' and further said, 'In order to assume the obligations imposed upon him by the contract, he made an entire change in his surroundings and changed his occupation and place of residence.' "

In the case at bar, we agree with the chancellor's finding that it was established by clear, cogent, satisfactory, and convincing evidence that Emma French and the ap-

pellee entered into a valid oral agreement and that pursuant to that agreement appellee changed his residence, employment, and mode of life and fully performed the agreed personal services.

It follows that we find no merit in appellants' two subordinate assertions since they relate to the sufficiency of the evidence.

Appellants also assert that rents from the lands during the administration of the estate were necessary for payment of debts and cost of administration and, therefore, should not have been awarded to the appellee.

The probate order closing the estate was not made a part of the record. At the time the chancellor rendered his oral opinion he inquired as to the disposition of the land rentals. Appellee's attorney responded: "One year's rent went into the estate and was finally administered out to the successive administrator and Preacher Robinson and the other rents were turned over to the defendants with the understanding those rents would follow the ownership of this land." Apparently this was an accurate statement in which the appellants acquiesced since it was not then contradicted or any evidence proffered to the contrary. Therefore, we cannot say that the appellants have demonstrated that the chancellor's finding is unsupported that the rents for 1968, 1969, and 1970 belong to the appellee.

Affirmed.