Julia D. JONES, Joseph H. Klerekoper,
and Jean W. Mallett *v.* Fairfax ABRAHAM, Jr.,
Henry Abraham, Martha Abraham,
Charles Abraham, Sarah D. Karney,
Jeanette D. Stucke, Frances G. Elola,
John T. Abraham, Julia D. Shepard,
Ruth A. Seymour, and William T. Abraham

99-1217 15 S.W.3d 310

Supreme Court of Arkansas
Opinion delivered April 13, 2000

*Robert McCallum*, Chancellor;

*Wright, Chaney, Berry, Daniel, Slaughter & Hughes, P.A.*, by: *Don P. Chaney* and *Edward M. Slaughter*; and *Hatfield & Lassiter*, by: *Richard F. Hatfield*, for appellants.

*Todd Turner, Robert Wright*, and *Ray Baxter*, for appellees.

RAY THORNTON, Justice. This case is before us on petition for review from the Arkansas Court of Appeals, pursuant to Ark. Sup. Ct. R. 1-2(e). In *Jones v. Abraham*, 67 Ark. App. 304, 999 S.W.2d 698 (1999) (hereinafter "*Jones II*"), the court of appeals affirmed the trial court's dismissal of appellants' suit to enforce an oral contract to make a will. Appellants then petitioned this court for review, contending that the chancellor erred in holding appellants to a heightened standard of proof to survive a motion to dismiss and on other grounds. Appellees filed a cross-appeal. We granted appellant's petition for review, and we affirm on both the appeal and the cross-appeal.

## I. Facts

When John Turner Abraham died in 1949, he was survived by five children, each of whom was to receive one-fifth of his substantial estate. His daughter, Frances Abraham, was the personal representative of the estate, but never filed an accounting, while continuing to manage the estate until her death in 1993. In the early 1970s, her three brothers filed claims against her for failure to file any inventory and accountings for the estate.

Frances had a better relationship with her sister, Sarah, and when Sarah became ill with cancer, Frances moved in to help care for her. In 1973, Sarah wrote a note to Frances transferring her one-fifth share in the estate to Frances "to pay on my debt to you."

Sarah died in 1975, survived by her husband and three children. Her children, appellants in this case, contend that, based on their mother's conveyance of her one-fifth share to Frances, Frances promised to leave all of her estate to them upon Frances's death.

At the time of Sarah's death in 1975, each of the three brothers continued to have a one-fifth interest in their father's estate. In 1979, Frances paid her brother, Henry, $112,500 for his share, then paid her brother, William, $150,000 for his share, and later conveyed property worth $130,000 to her brother, Fairfax, for his share. In 1979, following these acquisitions, Frances executed a will leaving one-half of her estate to the appellants. In 1980, Fairfax died, then William died in 1987, and Henry died in 1989. Their children are appellees and cross-appellants in this case.

In 1987, Frances executed another will, revoking the 1979 will, and devised her entire estate in equal one-fourth shares to be distributed *per stirpes* to the children of each of her four siblings. Following Frances' death in 1993, Sarah's three children contested this division of the estate, contending that it violated the alleged oral agreement requiring Frances to make a will devising all of the estate to them. The trial court granted appellees' motion for summary judgment, and the court of appeals determined that the trial court erred in granting summary judgment and reversed and remanded. *Jones v. Abraham*, 58 Ark. App. 17, 946 S.W.2d 711 (1997) ("*Jones I*").

Following remand, appellants proceeded to trial in the chancery court on their assertion that Frances had violated the terms of an oral contract to make a will. The chancellor granted appellees' motion for directed verdict after appellants rested their case. Appellees requested judgment for attorneys' fees and costs, including costs which accrued after the entry of an offer of judgment. The chancellor denied these requests, and both parties appealed.

The court of appeals affirmed the trial court by a three-to-three decision, and we granted petition for review. On *de novo* review, we have concluded that the trial court reached the correct result in granting the motion to dismiss and that the ruling should be affirmed, notwithstanding the trial court's mistaken use of the wrong standard of proof for granting a Rule 50 motion to dismiss. The trial court's decision in the cross-appeal is also affirmed.

## II. Contemporaneous-Objection Rule

In *Jones II*, the court of appeals did not reach the merits of appellants' first three points on appeal because it *sua sponte* cited the "contemporaneous-objection rule" as a ground for denying appellate review of the chancery court's order of dismissal. *Id.* Of the two cases cited by the appellate court in support of requiring a contemporaneous objection to the judgment or findings in chancery, neither case is apposite. *Stacks v. Jones*, 323 Ark. 643, 916 S.W.2d 120 (1996) is a case from circuit court, and *Moses v. Dautartas*, 53 Ark. App. 242, 922 S.W.2d 345 (1996) does not address the issue.

■■ We further note that the appellate opinion is in conflict with *Morrow v. Morrow*, 270 Ark. 31, 603 S.W.2d 431 (1980). In *Morrow*, we interpreted Ark. R. Civ. P. 46, and held that because appeals from chancery are reviewed *de novo*, there is no requirement of contemporaneous objections to the findings, conclusions, and decree of the court to obtain review on appeal. *Id.* For those reasons, we have concluded that the requirement for a contemporaneous objection is not applicable to this case, and *Jones II* is overruled on this point.

## III. Standard of Review

■ When we grant a petition to review a case decided by the court of appeals, we review it as if it were originally filed in this court. *Youngman v. State Farm Mut. Auto. Ins. Co.*, 334 Ark. 73, 971 S.W.2d 248 (1998); *Williams v. State*, 328 Ark. 487, 944 S.W.2d 822 (1997). All of the issues raised in the court below are before the appellate court for decision, and trial *de novo* on appeal in equity cases involves determination of fact questions as well as legal issues. *Ferguson v. Green*, 266 Ark. 556, 587 S.W.2d 18 (1979). We will uphold the chancellor's decision unless it is clearly erroneous. *Id.*

## IV. Motion for Directed Verdict

■■ The fundamental issue on appeal is whether the chancellor properly granted appellees' Rule 50 motion to dismiss. It is well established that, in ruling on a motion for directed verdict, the trial court views the evidence most favorably to the non-moving

party and gives that evidence its highest probative value, taking into account all reasonable inferences deducible from it. In determining whether to grant or deny a motion to dismiss, the chancellor must determine whether the evidence would be sufficient to present to a jury if the case were a jury trial. *Swink v. Giffin*, 333 Ark. 400, 970 S.W.2d 207 (1998).

■ The chancellor failed to use the proper standard in granting the motion to dismiss. Rather than using the "sufficient evidence" test for motions for directed verdict, he relied upon *McDonald v. Petty*, 254 Ark. 705, 496 S.W.2d 365 (1973). The *McDonald* case stands for the proposition that a heightened standard of "clear, cogent, satisfactory, and convincing evidence" is required to determine whether an oral contract to make a will is valid. *Id.* In *McDonald*, we stated:

> We have long recognized that an oral contract to make a will to devise or a deed to convey real estate is valid when the testimony and evidence to establish such a contract is clear, cogent, satisfactory and convincing. *Williams v. Robinson*, 251 Ark. 1002, 476 S.W.2d 1 (1972).

*Id.* The evidence "must be so strong as to be substantially beyond reasonable doubt." *Crowell v. Parks*, 209 Ark. 803, 193 S.W.2d 483 (1946). Although the standard enunciated in the *McDonald* case is applicable to the proof required to establish an oral contract at the conclusion of a case, the standard to be applied to determine whether a Rule 50 motion for directed verdict should be granted during the trial is whether there was sufficient evidence to present to a jury in a jury trial. *Swink, supra.*

■ Here, the trial court erred in applying the "clear, cogent, satisfactory, and convincing" standard, rather than the "sufficient evidence" standard, to its consideration of appellant's motion to dismiss. Notwithstanding this mistake, the trial court will be affirmed where it reaches the right result, even though it may have announced the wrong reasons, and the reviewing court is not constrained by the trial court's rationale but may go to the record for additional reasons to affirm. *State of Washington v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999).

## V. Oral contract to make a will

■ In our *de novo* review, we must determine whether sufficient evidence had been presented to the chancellor to support the submission to a trier of fact the question of whether there was an oral contract to make a will between Sarah Klerekoper and Frances Abraham. To survive the motion to dismiss, appellants were required to produce sufficient evidence of the essential elements of an oral contract. *Crump & Rodgers Co. v. Southern Implement Co.*, 229 Ark. 285, 316 S.W.2d 121 (1958)(*citing Werbe v. Holt*, 217 Ark. 198, 229 S.W.2d 225 (1950)). We have explained "mutual obligations" as follows:

> A contract to be enforceable must impose mutual obligations on both of the parties thereto. The contract is based upon the mutual promises made by the parties; and if the promise made by either does not by its terms fix a real liability upon one party, then such promise does not form consideration for the promise of the other party. '[M]utuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound' [citation omitted]. A contract, therefore, which leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other.

*Townsend v. Standard Indus., Inc.*, 235 Ark. 951, 363 S.W.2d 535 (1963) (citations omitted). Mutual promises that constitute consideration for each other are the classic method of satisfying the doctrine of mutuality. *J.L. McEntire & Sons, Inc. v. Hart Cotton Co.*, 256 Ark. 937, 511 S.W.2d 179 (1974).

■ Based upon our *de novo* standard of review, we hold that there was not sufficient evidence of mutual obligations for an alleged oral contract between Sarah Klerekoper and Frances Abraham to withstand a motion to dismiss. The trial court was not presented with any written evidence that supported the existence of an oral agreement between the two sisters. The complaint alleges that on or about May 1, 1973, Frances Abraham orally agreed to make a will, leaving all of her property to the children of her sister, Sarah Klerekoper, in return for Sarah's conveying her one-fifth interest in the J.T. Abraham estate to Frances. After Sarah's conveyance, it appears that at the time of the alleged agreement, Frances

held two-fifths of the J.T. Abraham estate. However, in 1979, after acquiring her three brothers' interests in the estate, Frances executed a will in which she bequeathed one-half of her estate to appellants. This is contrary to the alleged oral agreement. In 1987, Frances executed a second will that divided her estate into equal one-fourth shares to be distributed to the survivors of each of her siblings. This will is also contrary to the alleged oral agreement.

It was undisputed that Sarah Klerekoper executed documents wherein she voluntarily relinquished to Frances her one-fifth interest in the J.T. Abraham Estate. Sarah executed a "Release of all Claims" in 1974. In this document, Sarah warrants that no other inducements or promise had been made to her in order to induce her to execute the document. It is also undisputed that Sarah prepared a handwritten letter to Frances, dated May 5, 1973, that requests that her one-fifth interest be transferred to Frances "to pay on my debt to you." These exhibits are written evidence that defeat the notion that Sarah's transfer was consideration for the performance of an alleged oral contract to make a will. A promise to make a will, where no consideration is shown, will not be enforced. *Watts v. Mahon*, 223 Ark. 136, 264 S.W.2d 623 (1954).

Appellant Jean Klerekoper Mallet alluded to the agreement between her deceased mother and her aunt in her testimony. She testified that "[Frances] said my mother was going to leave her part of the J.T. Abraham estate to Frances and Frances was going to take care of it. Frances then said what was left of the estate when she passed away would go to my brother, my sister, and me." However, Ms. Mallet further testified that she had personal knowledge of her uncles' settlements with Frances. She stated, "When her brothers took Frances to court, they got the part of the J.T. Abraham estate they wanted. I believe that was after my mother [Sarah] died. When Frances told me she was going to leave everything to me, I didn't know what that would have included. I don't know whether she had possession of her brother's portion of the J.T. Abraham estate at that time."

Appellant Joseph Klerekoper testified that he "never heard anything from Frances about an agreement between Frances and Sarah," but he did hear about the agreement from his deceased mother. Julia Klerekoper Jones testified that Frances told her prior to 1977 that she would leave her estate to Sarah's children. Ms.

Jones also stated that "[t]here is no writing to prove the agreement I say Frances had with my mother."

Maurice Klerekoper, Sarah's husband, testified that Sarah gave her one-fifth interest to Frances by way of a quitclaim deed. He said it was his understanding that Frances would give his children a two-fifths portion of the J.T. Abraham estate. He further testified that he never had any discussions with Frances about the agreement that she and his wife allegedly made.

Appellants proffered the testimony of three disinterested witnesses, who testified that Frances told them she intended to leave her estate to the Klerekoper children. Although the chancellor found all of these proposed witnesses to be credible, he found that "none of these witnesses were able to provide testimony about the existence of any contract between Frances and Sarah or knowledge as to the alleged consideration between Frances and Sarah for the contract."

Additionally, John Reed testified that Frances told him she bought out her brothers' interest in the J.T. Abraham estate, and that Sarah gave her interest to Frances. Mr. Reed testified that he was present during a meeting in the late 1970's between Frances, her attorney, and his legal secretary. Mr. Reed testified that Frances said she bought out her brothers' interests, and that she had her sister's [Sarah's] interest. Mr. Reed further testified that Frances said that, at her death, her property would go to Sarah's children. However, Mr. Reed's testimony does not show that Frances's statement of her intent to give property to Sarah's children was in consideration of Sarah's gift to her.

On cross-examination, Mr. Reed testified that it was his understanding that Frances Abraham planned to give appellants her two-fifths portion of the J.T. Abraham estate "simply because she wanted to." While Mr. Reed's testimony reflected Frances's acknowledgment of Sarah's gift to her, and her intent to leave property to Sarah's children, his testimony does not demonstrate a *quid pro quo*, or a mutual obligation, between Frances and Sarah. None of the witnesses provided evidence as to alleged mutual promises between the two sisters. We are left with the written statements that Sarah's transfer of her one-fifth share was merely a gift to Frances.

 The trial court correctly determined that an element of the contract — exactly what property Frances allegedly agreed to convey to the Klerekoper children — was not proven. In our *de novo* review, we have concluded that there was not sufficient evidence to support the existence of an oral contract to make a will. We further find that the chancellor's decision to grant appellee's motion to dismiss was not clearly erroneous.

## VI. Hearsay evidence

 Appellants contend that the trial court erred in refusing to admit testimony of third parties to establish Sarah's intent to make an oral contract with her sister. At trial, several witnesses were prepared to testify to Sarah's intent in transferring her one-fifth interest to Frances. The chancellor ruled that this evidence was inadmissible as hearsay. Appellants appeal his ruling, arguing that the testimony is admissible under the state-of-mind hearsay exception under Ark. R. Evid. 803(3). This hearsay exception provides in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (3) A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

In most circumstances, Ark. R. Evid. 803(3) allows for the admission of state-of-mind testimony concerning a victim's intent to do something in the future. *Nicholson v. State*, 319 Ark. 566, 892 S.W.2d 507 (1995). We have extended the state-of-mind hearsay exception to situations involving a decedent's intent to dispose of property when the statements occurred near the death of the declarant. *See Easterling v. Weedman*, 54 Ark. App. 22, 922 S.W.2d 357 (1996).

 The testimony at issue constitutes multiple hearsay. Appellants proffered third-party testimony of statements assertedly

made by Sarah Klerekoper purportedly to show Sarah's intent in giving her one-fifth interest to Frances. However, the testimony was also directed toward proving Frances Abraham's intent to bequeath her property to appellants. This testimony constitutes hearsay under Ark. R. Evid. 801(c), as it was being proffered for the truth of the matter asserted. Hearsay is inadmissible except as provided by law or by the rules of evidence. Ark. R. Evid. 802. Statements by an out-of-court declarant, both of which are repeated in court by a witness, are inadmissible unless each part of the combined out-of-court statements conforms with an exception to the rule excluding testimony in the form of hearsay. Ark. R. Evid. 805. In this case, Ark. R. Evid. 803(3) permits testimony relating to Sarah's state of mind, but it does not permit testimony about Sarah's statements for the purpose of establishing what Frances's state of mind was. Therefore, the chancery court properly excluded this testimony.[1]

## VII. Cross-appeal

■ As their first allegation of error, cross-appellants argue that this appeal should be dismissed because cross-appellees did not timely and properly docket their record. Under Ark. R. App. P.— Civil 5(a), the record must be filed with the clerk of the Arkansas Supreme Court and docketed therein within ninety days from the filing of the first notice of appeal, unless the time is extended by order of the trial court. Cross-appellants present no convincing argument and no case law on the subject. They merely raise the issue with the court. We have said that when a party cites no authority or convincing argument on an issue, and the result is not apparent without further research, the appellate court will not address the issue. See *Webber v. Arkansas Dep't of Human Servs.*, 334 Ark. 527, 975 S.W.2d 829 (1998); *Country Corner Food & Drug, Inc. v. First State Bank*, 332 Ark. 645, 966 S.W.2d 894 (1998).

---

[1] The difficulty of presenting sufficient evidence for an oral contract to make a will has been reflected in the articulation of public policy considerations by the legislature in enacting Ark. Code Ann. § 28-24-101 (1987). While this statute is not relevant to the disposition of this case, we note that following its adoption in 1981, contracts to make a will or devise, if executed after June 17, 1981, can only be established by: "provisions of a will stating material provisions of the contract; or [a]n express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or [a] writing signed by the decedent evidencing the contract." *Id.*

■ ■ However, the timely filing of a notice of appeal is essential to our jurisdiction. *LaRue v. LaRue*, 268 Ark. 86, 593 S.W.2d 185 (1980). In this case, it appears that the record was properly filed. The trial court's order was entered on January 29, 1998. The notice of appeal was timely filed on March 2, 1998. Appellants properly filed a motion for extension of time for filing of record on May 29, 1998. The order granting that extension of time was filed on June 1. A subsequent order, entered on July 21, 1998, granted another extension of time until August 29, 1998, which was on a Saturday. The record then was filed on the following Monday, August 31, 1998. Filing the record on the following Monday is proper under Ark. R. App. P.—Civil 9. Furthermore, the trial court had authority to grant these extensions of time under Ark. R. App. P.—Civil 5(b). For these reasons, we observe that the record was properly filed with this Court.

As their second allegation of error, cross-appellants argued that the chancellor erred in his denial of attorneys' fees and costs under Ark. Code Ann. § 16-22-308 (Repl. 1999). In his order, the chancellor stated that he denied the attorneys' fees for the following reasons:

> I am going to grant defendants' motion to dismiss the plaintiffs' case. I hope the parties and attorneys understand that I am not naïve about this matter. Mr. Abraham left an estate in 1949. He left a Will. I personally believe that there have been more deceptions and more broken promises and more breaches of fiduciary duties and trusts than anybody in this room could possibly ever know or that any judge in the State of Arkansas could ever straighten up. I believe plaintiffs were acting in good faith in trying to enforce what they believe were one of those promises. Plaintiffs' attorneys did an excellent job under the constraints of Arkansas law and the rules of evidence and the fact that they were trying to prove something that occurred years and years ago with deceased witnesses. For that reason, I am not going to award any attorneys' fees or costs to any party in this action.

■ ■ The decision of whether to award attorneys' fees in a contract case is governed by Ark. Code Ann. § 16-22-308 which provides in pertinent part:

> In any civil action to recover on ... breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party *may* be allowed a reasona-

ble attorney fee to be assessed by the court and collected as costs. [Emphasis added.]

The operative word in this statute is *may*. The word *may* is usually employed as implying permissive or discretional, rather than mandatory, action or conduct and is construed in a permissive sense unless necessary to give effect to an intent to which it is used. *Chrisco v. Sun Industries Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990). A trial court is not required to award attorney's fees and, because of the trial judge's intimate acquaintance with the trial proceedings and the quality of service rendered by the prevailing party's counsel, we usually recognize the superior perspective of the trial judge in determining whether to award attorney's fees. *Chrisco, supra.* The decision to award attorneys' fees and the amount to award are discretionary determinations that will be reversed only if the appellant can demonstrate that the trial court abused its discretion. *Nelson v. River Valley Bank & Trust*, 334 Ark. 172, 971 S.W.2d 777 (1998); *Burns v. Burns*, 312 Ark. 61, 847 S.W.2d 23 (1993). A grant of attorney's fees is an issue within the sound discretion of the chancellor and will not be disturbed on appeal absent an abuse of discretion. *Burns, supra.* In this case, we conclude that the chancellor did not abuse his discretion in denying attorneys' fees and costs.

■ As their third allegation of error, cross-appellants also argue that they should have been awarded attorneys' fees under Ark. Code Ann. § 16-22-309 (Repl. 1999) and Ark. R. Civ. P. 11. This argument is unfounded. In order to prevail on a claim for attorneys' fees, the movant must show, in essence, that there was a complete absence of a justiciable issue of law or fact raised by the opposing party. Ark. Code Ann. § 16-22-309(b). Cross-appellants never specifically requested that the chancery court award them attorney's fees pursuant to Ark. Code Ann. § 16-22-309. A party will not be heard to complain on appeal that the trial court did not grant him a particular kind of relief if he did not request it. *Fine v. City of Van Buren*, 237 Ark. 29, 371 S.W.2d 132 (1963).

■ Ark. R. Civ. P. 11 provides for sanctions; however Rule 11 requires that a motion for sanctions be made separately from other motions or requests. The separate motion must also describe the specific conduct alleged to be violative of Rule 11. Cross-appellants never requested that the chancery court impose Rule 11

sanctions. Therefore, they are procedurally barred from obtaining attorneys' fees on this theory.

Cross-appellants also argue that the chancery court erred in denying their motion styled, "Offer of Judgment," which they filed on October 16, 1997. Cross-appellants filed this motion pursuant to Ark. R. Civ. 68. In pertinent part, cross-appellants' offer of judgment states:

> The [cross-appellants] offer to withdraw any claim for judgment for their attorneys' fees and costs against the [cross-appellees] in exchange for the [cross-appellees'] dismissal of their lawsuit filed herein.
>
> If this offer is accepted, the [cross-appellees] shall be entitled to receive one-third of one-fourth of the net value of the estate of Frances Abraham to be calculated at the date of final distribution, as set forth in the Last Will and Testament of Frances Abraham....
>
> If this offer is not accepted by the [cross-appellees] and [they] do not receive an award at trial of an amount in excess of the sum represented by this offer, then the [cross-appellees] shall be liable to the estate for all costs accrued hereafter and the estate shall seek judgment for the same as provided by [Ark. R. Civ. P.] 68.

Ark. R. Civ. 68 provides in pertinent part:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued.

The purpose of Rule 68 is to provide a means by which a defendant can compel the plaintiff realistically to reassess his claim and thereby, perhaps, persuade plaintiff to settle. See *Darragh Poultry & Livestock Equipment Co. v. Piney Creek Sales, Inc.*, 294 Ark. 427, 743 S.W.2d 804 (1988).

■■ The chancellor denied cross-appellants' motion for costs based on their October 1997 offer of judgment. Cross-appellants made a settlement offer of "one-third of one-fourth of the net value of the estate of Frances Abraham," which was no greater than the minimum amount that cross-appellees were to inherit under Frances Abraham's last will executed in 1987. The three appellants

were to inherit one-fourth of Frances Abraham's estate under the 1987 will. Rule 68 is not applicable where a defendant makes an offer of settlement that is no greater than the minimum amount that the plaintiff can recover. The trial court was correct in its ruling.

Finally, cross-appellants argue as an additional reason for affirmance the doctrine of accord and satisfaction. We need not consider their argument because, if we affirm a judgment on one ground, we need not consider alternative grounds for affirmance. *Barnhart v. City of Fayetteville*, 335 Ark. 57, 977 S.W.2d 225 (1998).

On October 25, 1999, appellees filed a separate petition for taxation of costs and attorneys' fees, which is denied for the reasons stated above.

We affirm on appeal, and on the cross-appeal.

ARNOLD, C.J. and BROWN, J., not participating.