Lark HUNTER and Adelma Hunter
*v.* Vernon L. ROBERTSON

CA 00-379                                      40 S.W.3d 337

Court of Appeals of Arkansas
Division IV
Opinion delivered March 28, 2001

*Pike & Bliss, P.A.*, by: *George E. Pike, Jr.*, for appellants.

*McMullan Law Firm*, by: *Marian M. McMullan*, for appellee.

Andree Layton Roaf, Judge. In this adverse-possession case, Lark and Adelma Hunter appeal from a Pulaski County Chancery Court order granting summary judgment in favor of Vernon L. Robertson, an owner of adjacent land on Kanis Road in Little Rock. The Hunters had sought to be declared the owners of a three-tenths of an acre tract of unimproved land (hereinafter the "disputed tract") that was excluded from the legal description of both the Hunter and Robertson properties when

their land was conveyed from a common predecessor-in-title. On appeal, the Hunters argue that: 1) payment of taxes for fifteen consecutive years on wild and unimproved land vests title under Ark. Code Ann. § 18-11-103 without proof of the elements of actual adverse possession; 2) the payment-of-taxes requirement of Ark. Code Ann. § 18-11-103 is satisfied if no taxes are assessed on the disputed tract; and 3) the legal description in the tax receipts was sufficient to prove payment of taxes on the property. We affirm.

Both parties agree that prior to the dispute, the last record title holders of the disputed tract were L. A. and Leila Mae Kessinger, husband and wife, who were common grantors in both Robertson's and the Hunters' chain of title. Robertson acquired his property, approximately one acre, in 1992. The Hunters purchased their land, approximately ten acres, in 1993. Their direct predecessor-in-title, the Durhams had acquired the land from a tax-exempt charitable organization, Aldersgate, Inc., in 1981. The Pulaski County Assessor, however, did not remove the tax-exempt status on the land until 1985, at which time the Durhams began to pay *ad valorem* taxes. The Hunters paid *ad valorem* taxes for the entire time that they owned their property. Together, the Durhams and the Hunters paid taxes on the disputed tract for thirteen years.

According to Lark Hunter's deposition testimony, in January of 1998, the Pulaski County Assessor's Office informed the Hunters that they had erroneously been paying taxes on the disputed tract for "numerous years" and inquired whether or not they claimed the property. At the time, Hunter told the assessor's office that he had no such intention, however, he subsequently obtained legal counsel and, on advice of counsel, immediately erected a two-strand, steel-post barbed-wire fence to connect the disputed tract to his property. Hunter admitted, however, that Robertson had been using at least part of the disputed tract by driving on it.

Initially, the Hunters sued Robertson in circuit court seeking declaratory judgment as well as compensatory and punitive damages for trespass, wrongful removal of the Hunters' fence, and slander of title, based on the fact that Robertson had obtained a quit-claim deed to the disputed parcel in December 1998 from the family of L. A. Kessinger. Robertson counterclaimed, alleging that he and his predecessors-in-title had adversely possessed the disputed parcel and had obtained a quit-claim deed from the owners of record. Robertson prayed for dismissal of the Hunters' complaint, for the title to

be quieted, and for his own declaratory and monetary relief. Subsequently, Robertson successfully moved to transfer the case to chancery court.

Once in chancery court, Robertson filed a motion for partial summary judgment. Attached as an exhibit were graphic depictions of how the property descriptions in the Hunters' deed and the tax bill did not coincide. After a hearing, the chancellor granted Robertson's motion, finding that the Hunters did not establish the elements of adverse possession because they did not hold with the required intent in that they were not even aware that they had any possible ownership interest in the disputed parcel until the assessor's office told them that they had been paying taxes on it. The chancellor also found that tacking to an owner with tax-exempt status would not be allowed because it produced "wholly inequitable results," and therefore, the Hunters did not have color of title. The Hunters moved for reconsideration and Robertson filed a motion to dismiss his counterclaim. The chancellor denied the Hunters' motion, but allowed Robertson to dismiss his counterclaim.

■ ■ The Hunters concede that there are no factual disputes and therefore summary judgment was appropriate; on appeal they challenge the chancellor's conclusions of law. Accordingly, this shall be the focus of our review. *See McCutchen v. Patton*, 340 Ark. 371, 10 S.W.3d 439 (2000). All of the issues raised in the court below are before us for decision, and trial *de novo* on appeal in equity cases involves determination of fact questions as well as legal issues. *Jones v. Abraham*, 341 Ark. 66, 15 S.W.3d 310 (2000). We will uphold the chancellor's decision unless it is clearly erroneous. *Id.* Although this court gives great deference to findings of fact by the chancellor due to the chancellor's superior position to determine credibility issues, it does not give such deference to matters of law, in that the chancellor stands in no better position to apply the law than this court, and when we find that the chancellor misapplied the law and that, as a result, an appellant has suffered prejudice, we will reverse the erroneous ruling. *Acord v. Acord*, 70 Ark. App. 409, 19 S.W.3d 644 (2000).

The Hunters first argue that payment of taxes for fifteen consecutive years on wild and unimproved land vests title under Ark. Code Ann. § 18-11-103 without proof of the elements of actual adverse possession. They contend that the chancellor incorrectly concluded that they could not hold by adverse possession under Ark. Code Ann. § 18-11-103 (1987), unless they also proved all of the elements required for proof of actual adverse possession. Citing

*Schmeltzer v. Schied*, 203 Ark. 274, 157 S.W.2d (1941), they contend that the supreme court has "consistently" held that the effect of this statute is to vest title once a claimant proves that he has paid taxes on wild and unimproved land for fifteen consecutive years. The Hunters assert that the chancellor erroneously interpreted the effect of Ark. Code Ann. § 18-11-106 (Supp. 1999), on Ark. Code Ann. § 18-11-103, because once they proved the two elements required by that statute, *i.e.*, that the land was wild and unimproved and that taxes were paid for fifteen consecutive years, then title vests. Robertson concedes that the chancellor may have erred when he dismissed the Hunters' case pursuant to Ark. Code Ann. § 18-11-106; however, he asserts that the error was "merely harmless" because the chancellor also found that the Hunters had not satisfied the elements of Ark. Code Ann. § 18-11-103.

█ The statutory section that the Hunters rely on states:

> Payment of taxes on wild and unimproved land in this state by any person or his predecessor in title for a period of fifteen (15) consecutive years shall create a presumption of law that the person, or his predecessor in title, held color of title to the land prior to the first payment of taxes made as stated and that all the payments were made under color of title.

Ark. Code Ann. § 18-11-103. Case law applying this section appears to support the Hunters' argument; paying taxes on wild and unimproved land not only gives a claimant color of title, but constructive possession as well. *See Smith v. Boynton Land & Lumber Co.*, 131 Ark. 22, 198 S.W. 107 (1917); *Wells v. Rock Island Improvement Co.*, 110 Ark. 534, 162 S.W. 572 (1913); *see also McKim v. McLiney*, 250 Ark. 423, 465 S.W.2d 911 (1971). Accordingly, the real issue, as Robertson asserts, is whether the chancellor erred in finding that the Hunters failed to satisfy the requirements of Ark. Code Ann. § 18-11-103, in that they and their predecessors-in-title actually paid taxes on the disputed tract for only thirteen years.

In this regard, the Hunters also argue that the payment-of-taxes requirement of Ark. Code Ann. § 18-11-103 is satisfied if no taxes are assessed on the disputed tract. The Hunters contend that "logic and fairness dictate" that the requirement under Ark. Code Ann. § 18-11-103 that property tax be paid on wild and unimproved land for fifteen years can be satisfied by something other than money and that in this case that satisfaction was accomplished by the granting of tax-exempt status. They claim that by granting tax-exempt status, the obligation to pay taxes had been discharged and payment had

been made. The Hunters assert that while their interpretation is still an open question in Arkansas, cases from foreign jurisdictions support their position. This argument is without merit.

■ In *Kelley Trust Co. v. Lundell Land & Lumber Co.*, 159 Ark. 218, 251 S.W. 680 (1923), the supreme court stated that an appellant had not acquired property by the payment of taxes where its predecessor-in-title, upon whom it depended for payment of taxes for a portion of the statutory period, was a tax-exempt entity and therefore paid no taxes. Contrary to the Hunters' assertion, we find the applicable language in this case to be a holding, and not *dicta*, because it is dispositive of one of the issues raised by the appellant on appeal.

■ Not allowing the Hunters to realize the same benefit from not paying taxes as they would from paying taxes seems to be eminently sound and unfailingly fair. In *Schmeltzer v. Schied, supra*, the supreme court noted that the enactment of Act 199 of 1929, which is currently codified as Ark. Code Ann. § 18-11-103, was to encourage the *payment of taxes. See also Burbridge v. Bradley Lumber Co.*, 214 Ark. 135, 215 S.W.2d 710 (1948). Obviously, being excused from paying taxes is its own reward and needs no inducement.

■ Furthermore, under Ark. Code Ann. § 18-11-103, it is the paying of taxes that gives color of title and, pursuant to the interpretation of the statute by our supreme court, constructive possession of the property. The payment of taxes involves positive action by the claimant and serves as constructive notice to the true owner of this action through the recording of this payment in the collector's office. If no tax bill was issued, neither would occur.

Moreover, the decisions from foreign jurisdictions cited by the Hunters do not compel a contrary interpretation. In *Mings v. Compton City Sch. Dist.*, 18 P.2d 967 (Cal. App. 1933), in upholding a decision that the appellee school district had acquired by adverse possession a strip of property that had been used as part of a school playground for more than twenty years, the California Court of Appeals held that the district met the requirements of the California adverse-possession statute requiring it to pay all property taxes on the claimed property for the statutory period by paying all the taxes that had been levied and assessed, which by virtue of its tax-exempt status meant none. *Mings* is distinguishable from the instant case in that all the other requirements for adverse possession were met by the school district. Similarly, *Trappett v. Davis*, 633 P.2d 592 (Idaho

1981), and *Hogan v. Blakely,* 251 P.2d 309 (1952), are also cases where the "non-tax elements" of adverse possession had been met. In *Park West Village, Inc. v. Avise,* 714 P.2d 1137 (Utah 1986), some taxes were paid, though, through an error at the assessor's office, not enough.

■ In the instant case, the Hunters rely on no act of adverse possession other than that they and their predecessors-in-title paid taxes *and* were exempted from paying taxes on the disputed tract. Were we to carry the Hunters' rationale to its ludicrous extreme, tax-exempt entities, by doing nothing, could conceivably acquire wild and unimproved land in Arkansas where someone fails to pay the taxes on it for the applicable statutory period. In sum, we construe the statutory requirement exactly as written: "payment of taxes" means actual payment of taxes.

The Hunters finally argue that the legal description in their tax receipts was sufficient to prove payment of taxes on the property. They contend that the chancellor's finding of fact: "That Plaintiffs paid taxes on said property due to a mistake in the legal description maintained by the Pulaski County Tax Assessor's office," is sufficient to "cure any question" raised below by Robertson that defects in the legal description of the disputed tract are fatal to their adverse-possession claim. Citing *Junction City Special Sch. Dist. No. 75 v. Whiddon,* 220 Ark. 530, 249 S.W.2d 990 (1952), they contend that the fact that the disputed tract was misdescribed in the tax records is "immaterial" to their adverse-possession claim because the chancellor found that they had paid taxes on the disputed tract. The Hunters further assert that the disputed tract could be readily ascertained from the tax records as evidenced by the fact that the assessor's office simply removed the disputed tract from the Hunter tract and gave it its own parcel number.

■ Because we are affirming the chancellor on point II, this point becomes moot. However, we note that in *Charles v. Pierce,* 238 Ark. 22, 378 S.W.2d 213 (1964), the supreme court held that an indefinite description of the property on which the taxes were being paid prevented the appellant from acquiring title to property by adverse possession, and distinguished *Junction City Special Sch. Dist. No. 75 v. Whiddon, supra,* the case relied upon by the Hunters, noting that in that case the court stated:

> While the description under which appellees claimed was faulty, it was evident that they were claiming all that remained of the NW 1/4 of the NW 1/4 of section 28, township 19, range 16

west, 35 acres, after appellant's 5-acre tract had been carved out of that 40 acres under a definite correct metes and bounds description, which located the 5 acres in the NW corner of the NW 1/4 of section 28, township 10, range 16 west, etc. We think this was sufficient to identify this 35 acres claimed by appellees and entitled them to the benefits of 37-103.

The holding in *Charles v. Pierce, supra* is analogous in that there is a substantial variance between the two possible interpretations of the tax bill description and the description in their deed.

We affirm.

ROBBINS and BIRD, JJ., agree.